**STATE of Missouri, Respondent,**

v.

**Martin J. FINCH, Appellant.**

**No. WD 39466.**

Missouri Court of Appeals, Western District.

Feb. 23, 1988.

---

608

David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

Martin J. Finch was charged with attempted forcible rape and sexual abuse in the first degree of the complainant, Eula Martin. A jury heard the evidence, acquitted Finch of rape, but convicted him of sexual abuse. The trial court found Finch to be a persistent sexual offender and later, a persistent offender and sentenced him to five years' imprisonment without eligibility for probation or parole. We reverse the conviction and grant a new trial.

The facts of the case are relevant to appellant's complaint that the trial judge failed to instruct on a lesser included offense. Eula Martin, a twenty-nine year old woman, was the complaining witness against Finch. Ms. Martin lived in Lawrence, Kansas with her three children and a boyfriend. On the night of August 21, 1986, at about 10:00 p.m., Ms. Martin went alone from her home to visit a bar in Lawrence. Upon arriving there, she was invited to join two men with whom she had not previously been acquainted, Finch and Al White. The three remained in the bar drinking for approximately one hour.

Finch and White were employed as canvassers for a Kansas City company and had been brought to Lawrence to work the area that day. Although they had transportation back to Kansas City, they remained too long in the bar and missed their ride. They prevailed on Ms. Martin to drive them to Kansas City in her car. Before leaving Lawrence, they went to a service station where White purchased gasoline together with whiskey, beer and wine cooler for Ms. Martin. Thus supplied, Ms. Martin left Lawrence with White and Finch as passengers headed for Kansas City.

When the trio reached Kansas City, Kansas, White indicated to Ms. Martin that he would show her a couple of places to go if she had the opportunity to return another time and directed her to drive to a club on the Kansas side. At that bar, Ms. Martin and Finch remained in the car while White briefly went inside. From there, White took over the driving and they went to a second bar. All three entered that location, apparently near the bus depot in Kansas City, Missouri, and drank beer and Finch and Ms. Martin danced. Some two hours later, it was agreed to end the evening, and Ms. Martin resumed driving for the purpose of taking White to his automobile located in the parking lot of his employer in downtown Kansas City.

When the parking lot was reached, White entered his car but Finch remained with Ms. Martin under an agreement that she would drive him home. White had earlier promised to guide Ms. Martin to the turnpike entrance for her return trip to Lawrence and as the two cars left the parking lot, White was following to lead Ms. Martin to the highway once she had delivered Finch to his house. According to White, however, he drove off when he noted that Finch and Ms. Martin were driving in the opposite direction from Finch's home.

The foregoing facts were not a subject of any conflicting testimony, but the next succeeding events are less certain. According to Ms. Martin, after they left the employee parking lot, she drove up and down various streets at Finch's direction and she was uncertain where she was. At a time or times, Finch guided the car by grabbing the steering wheel. Eventually the car reached a central city park where the vehicle stopped. Ms. Martin testified that Finch kissed her and touched her breasts and genitals without her permission and despite her protestations. At this time, Ms. Martin was behind the steering wheel of the car and Finch was seated beside her. The time was approximately 2:00 a.m.

By coincidence, the area where the car was stopped was used by police officers on the late shift for physical training and that night three officers ran by while Finch and Ms. Martin were in the parked vehicle. Ms. Martin shouted out the open car window as the officers passed, they returned and upon Ms. Martin's complaint that Finch had attempted to rape her, Finch was placed under arrest and was eventually charged.

The principal point of error requiring reversal of the judgment is the failure of the trial court to instruct the jury upon the lesser included offense of sexual abuse in the third degree. The distinction between sexual abuse in the first degree, § 566.100, RSMo 1986,[1] a class D felony, and sexual abuse in the third degree, § 566.120, a class B misdemeanor, is that first degree abuse requires proof of forcible compulsion. Third degree abuse is, like first degree abuse, the accomplishment of a nonconsensual sexual contact, but without the application of force on the victim to achieve the contact. Sexual contact is defined in § 566.010.1(8) to be the touching of the genitals or anus of any person or the breast of any female person for the purpose of arousing or gratifying sexual desire. Thus, sexual contact accomplished under circumstances where the victim has not been subdued or restrained by the use of force, but who is, nonetheless, an unwilling recipient of the personal intrusion is third degree sexual abuse. In this discussion, we do not consider sexual abuse of children or incapacitated persons.

In this case the evidence was that Ms. Martin voluntarily joined Finch and White, persons she did not know, in a local bar, drank alcoholic beverages with them and then undertook late at night to drive them from Lawrence, Kansas to Kansas City, Missouri. Although the original purpose of the trip was merely to provide substitute transportation, Ms. Martin acquiesced in visits to other bars where she continued to socialize with the men, drinking and dancing with appellant. Later she agreed to drive appellant home in his company alone and during the events which later occurred, it was she who was in the driver's seat of the vehicle.

The only evidentiary basis in the case to support the charge of first degree sexual abuse required the jury to find that Finch forced Ms. Martin to drive her car to the city park and held her there against her will to consummate the sexual contact. On this issue, the evidence was at least uncertain and far from conclusive. The police

officers who happened by the parked car at first noticed nothing unusual. The first two officers saw Finch embracing Ms. Martin, but they heard no outcry and saw no sign of anything they would not expect in such circumstances. It was only when the third officer approached that Ms. Martin acted to attract his attention. Each officer agreed that Finch had one hand on Ms. Martin's breast and the other beneath her skirt. There was also conflicting testimony as to whether Ms. Martin was in control of the vehicle. She testified that she was prevented from leaving the park because Finch had taken the ignition keys. The police officer testified, however, that the keys were in the ignition and he later removed them and handed them over to Ms. Martin.

The trial court must instruct the jury on all lesser included offenses supported by the evidence and it is error not to do so. In order to require the giving of an instruction on the included or lesser offense there must be support in the case for its submission. *State v. Story*, 646 S.W.2d 68, 73 (Mo. banc 1983).

In the present case, the evidence as a whole and the variances between the facts as related by Ms. Martin and as recounted by the police officers were sufficient to entitle the jury to find that Finch's sexual advances to Ms. Martin were without her consent but were not accomplished by application of force which conviction of first degree sexual assault requires. The court should therefore have given the instruction in the form of MAI–CR 3rd 320.20 and 304.02 as tendered by appellant and it was error not to do so.

Other points on appeal note errors committed by the state and by the trial court. They are discussed for purposes of guidance on retrial.

A substantial degree of confusion accompanied the state's efforts to charge Finch with prior offenses subjecting him to enhanced punishment. In its first amended information, the state charged Finch to be a persistent sexual offender under

---

1. All statute references are to RSMo 1986.

§ 558.018. To sustain this charge, the state alleged and attempted to prove that Finch had been convicted in Texas of rape. Before selection of the jury commenced, the court conducted a hearing on the persistent sexual offender charge. The state offered and the court received over the defendant's objections, an exhibit consisting of four pages. The first page was a certification by the record clerk of the Texas Department of Corrections that the attached pages were the conviction records of Mark James Jones. The second and third pages were from the District Court of Dallas County, Texas, showing the convictions of Mark James Jones for aggravated assault and aggravated rape. The fourth page was the fingerprint record of Martin Finch, alias Martin James Finch, from the Texas Department of Corrections. The certification made no mention of Martin Finch.

■ This proof was insufficient to support a finding made by the trial court that Martin J. Finch was a persistent offender. The certified conviction record was that of Mark James Jones, not of appellant. The certification itself made no reference at all to Martin James Finch and therefore the fingerprint record was without any official status. In short, there was no documented basis to connect appellant with the Texas conviction and for all that appears, attachment of appellant's fingerprint record dating from December, 1978, could have been a clerical record error.

■ The state did offer, and the court admitted over the defense objection, a copy of a Federal Bureau of Investigation "rap sheet" which purported to show as a single record the convictions of Martin James Finch and Mark James Jones. The record was not a certified or attested document, no custodian of FBI records appeared and the origin of the copy or the location of the original was not described. The document was not competent evidence, the objection to it should have been sustained and the court was not entitled to consider it in ruling on appellant's status as a persistent offender.

It must be acknowledged that some basis does exist to speculate that appellant and Mark James Jones are one and the same person. The convictions of Martin James Finch referred to on the fingerprint record show: "Rape (1) Agg Asslt (1)" and the date of sentence is the same as that shown on the convictions of Mark James Jones. Obviously, appellant was in the custody of the Texas Department of Corrections at some time between 1978 when the fingerprint record was made and 1981. Proof of prior, persistent, dangerous or persistent sexual offender statutes may not, however, depend on speculation and conjecture.

■ A defendant may be found to be a persistent offender only if evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that defendant is a persistent offender. Section 558.021.1(2); *Eakins v. State*, 734 S.W.2d 290, 292 (Mo.App. 1987). The state has two burdens which must be sustained before the court is entitled to sentence a defendant under the enhanced penalties applicable to persistent offenders. The information or indictment must allege the convictions of two felonies committed at different times, § 558.019.4(2), and proof must be adduced showing beyond a reasonable doubt that the accused was so convicted.

In this case, the state failed to satisfy the second requirement because the conviction of appellant in Texas was not proved beyond reasonable doubt. It is only by speculating that Finch and Jones are one and the same person that the conviction is proved. There was, therefore, no evidentiary basis for the court's finding that Finch was a persistent sexual offender.

The trial court further compounded the error relative to persistent sexual offender status when it imposed sentence. After restating the prior finding that Finch was a persistent sexual offender, the court noted the jury's verdict which found Finch guilty of "Forcible Sexual Abuse I," and the court then imposed a sentence of five years to be served without eligibility for probation or parole.

■ In the first place, the conviction for sexual abuse in the first degree does not subject Finch to sentencing as a persistent sexual offender even if a prior sex offense conviction were proved. Under § 558.018, extended sentencing is applicable only when the defendant is convicted a second time for the crime of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of those crimes. Finch was acquitted by the jury of the attempted rape charge and he was therefore not subject to sentencing under § 558.018 upon conviction for sexual abuse.

Secondly, if Finch were subject to sentencing as a persistent sexual offender, the sentence of five years could not have been imposed. Under § 558.018, the minimum term of sentence for a persistent sexual offender is thirty years.

The next event relative to enhanced sentencing occurred on the second day of trial. The state at that point sought leave to charge Finch as a persistent offender by filing an amended information. The stated allegation was that Finch had previously pleaded guilty to robbery in Jackson County, Missouri and had been placed on probation. That conviction, coupled with the Texas conviction, was alleged to satisfy the conditions of § 558.016.3 defining a persistent offender. The court granted leave to file the amended information, which the prosecutor apparently had in hand at the time, but to further confuse the proceedings, it is agreed here that the amended information was never filed. The defense objected to the amendment in the charge as untimely and claimed surprise and lack of time to prepare. The objection was overruled and the court found Finch to be a persistent offender.

■ If it be assumed that the court sentenced Finch as a persistent offender, § 558.019.4(2), then the sentence was unlawful in the denial of probation or parole for the full term of sentence. The minimum term to be served by a persistent offender is sixty percent of the sentence. Section 558.019.2(2). The court has no power to exclude consideration of a persistent offender from parole consideration af-

ter service of the minimum sentence and the judgment upon Finch was therefore unlawful if imposed as for a persistent offender.

Finally, on this subject, if the state failed to prove the conviction of Finch in Texas, as we have concluded, then it failed to prove the two previous convictions necessary to find Finch a persistent offender invoking § 557.036.2(2) and the withdrawal of sentencing from the jury. If Finch was entitled to have the jury pass on the question of sentence and the jury was not so instructed, as was the situation here, the error can only be corrected by granting a new trial. *State v. White*, 710 S.W.2d 934, 937 (Mo.App.1986).

■ A further problem which may arise on retrial requires comment. If the evidence submitted on the charge of sexual abuse, the only remaining offense upon which appellant may be retried, entitles appellant to submission of sexual abuse in the first degree and sexual abuse in the third degree, the court must instruct the jury on punishment as to the latter charge even if appellant is proved to be a prior offender or a persistent offender. At the first trial, the court failed to guard against acquittal of Finch on the charge of rape by instructing on punishment as to sexual abuse. That instruction would have been essential if Finch had been charged only as a persistent sexual offender.

■ In the case of first degree and third degree sexual abuse, the assumed posture on retrial, a verdict of guilty on the lesser offense will not invoke the sentencing provisions of § 557.036.2(2). This follows because sexual abuse in the third degree is a misdemeanor and sentencing by the court is not applicable in misdemeanor cases except on request by the defendant. *State v. Meeks*, 734 S.W.2d 282 (Mo.App. 1987); MAI CR 3d § 304.08, Notes On Use 4.

The court also finds merit in appellant's complaint that the trial court unduly restricted defense counsel's voir dire examination of the jury panel. Counsel asked the panel generally whether they would

automatically believe the testimony of an alleged rape victim merely because she said a rape was attempted. The state objected and counsel responded by comparing the inquiry to one routinely made about belief in the truthfulness of police officers merely because they are employed in that occupation. The court expressed its opinion that both questions are improper and sustained the objection.

It is the rule in this state that a liberal latitude is allowed in the examination of the jurors on voir dire. The only legitimate limitation would be at that point where the inquiry tended to create prejudice. *State v. Granberry*, 484 S.W.2d 295, 299 (Mo. banc 1972). Litigants have the right, through the process of voir dire, to discover bias or prejudice on the part of prospective jurors and they should be allowed a wide latitude in the search for open minded jurors. *State v. Ward*, 569 S.W.2d 341, 344 (Mo.App.1978).

*State v. Owens*, 620 S.W.2d 448 (Mo.App. 1981), discusses the general concept of prejudice where a juror has a bias in terms of a fixed partiality toward the evidence of a particular class of persons. Although not dispositive in that case, the opinion observes that where a prospective juror enters the trial of the case with the formed disposition to give preferential belief to a generic class—as for example, peace officers—the bias of credibility contrary to the interest of a litigant disqualifies the person to serve as a juror.

Citing *Owens*, this court in *State v. Butler*, 660 S.W.2d 225 (Mo.App.1983), reaffirmed the proposition in a case where the venireperson stated on voir dire an inclination to believe a witness merely because he was a police officer. The trial court refused a challenge for cause as to that venireperson and the defense used a peremptory challenge to eliminate that member of the panel. The conviction was sustained, but only because police testimony was not important or paramount in making the state's case.

In *State v. Roseman*, 583 S.W.2d 232 (Mo.App.1979), six persons participated in committing the crimes, but only four were charged. The remaining two were witnesses for the state. On voir dire, the prosecutor inquired of the panel whether any member would tend to disbelieve those witnesses merely because they had been relieved of charges in exchange for their testimony. The defendant contended on appeal that an objection to that inquiry was erroneously overruled. The opinion held the question proper because counsel was entitled to discover if the panel harbored any prejudice against witnesses merely because of the circumstances described, that is, a bias against witnesses who avoid prosecution in return for giving evidence.

In the subject case, defense counsel was entitled to learn if any of the prospective jurors had a predisposition to accept as true the testimony of alleged rape victims generally, for whatever reason such preferential belief may have been harbored. It was error for the court to deny defense counsel the opportunity to make this inquiry of the jury panel.

By reason of the several errors committed by the trial court, the judgment of conviction and sentence are reversed and the case is remanded for a new trial.

All concur.