**STATE of Missouri, Respondent,**

v.

**Vincent GREER, Appellant.**

**No. ED 77756.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 2001.

Application for Transfer Denied
Jan. 22, 2002.

---

502

Michael A. Gross, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

## GARY M. GAERTNER, Judge.

Appellant, Vincent Greer ("appellant"), appeals from the judgment of the Circuit Court of St. Louis County convicting him of murder in the first degree, section 565.020, RSMo 1994,[1] assault in the first degree, section 565.050, and two counts of armed criminal action, section 571.015. Appellant was sentenced to terms of life without the possibility of parole, ten years, twenty years, and seven years respectively, all sentences to run concurrent. We reverse and remand.

On the morning of November 26, 1997, Stanley Greer ("father") called downstairs to wake up his son, appellant, who was fifteen years old at that time. Father came into appellant's room, the two argued, and father left. Approximately twenty minutes later, father returned downstairs to get his son up for school. Father opened appellant's bedroom door, turned on the lights and did not see appellant. Appellant, unbeknownst to father, was hiding behind a couch with his father's .22 caliber rifle. Appellant shot his father who stumbled and fell. Father shouted for appellant's mother, who came down the stairs, saw what happened, and ran back upstairs. Appellant chased her up the stairs, but when he reached the top, the basement door was locked.

Appellant ran back down the stairs and out of the garage. Appellant ran up onto the deck and broke the glass out on the sliding glass door. Appellant walked into the kitchen and saw his mother crouched down behind a breakfast bar. Appellant, ignoring his mother's plea not to shoot, shot her in the head. Appellant's mother died from the gunshot wound to the back of her head.

Appellant was charged by indictment with one count of murder in the first degree, one count of assault in the first degree, and two counts of armed criminal action. At trial, appellant presented evidence that he allegedly suffered from schizophrenia. Appellant, as part of his defense, presented the testimony of an expert witness, Dr. John Rabun. Dr. Rabun was appointed by the court to examine appellant and ultimately testified on behalf of appellant for the defense.

Dr. Rabun initially filed a report with the trial court before the commencement of trial. In the report, he noted that he asked appellant whether his parents were contemplating divorce or whether either of them might be having an affair. Appellant gave a negative response to each of these questions. Dr. Rabun determined that appellant knew the nature and quality of his acts, but did not appreciate the wrongfulness of his conduct at the time of the shootings, in part because of the absence of any rational motive for shooting his parents.

At trial, Dr. Rabun testified that he spent a considerable amount of time looking for an alternative explanation (other than mental illness) for appellant's acts. Dr. Rabun opined that perhaps there was some sort of family turmoil, which could cause "an exaggerated reaction in a 15-year-old." Dr. Rabun testified that he discovered no information that appellant's parents had been discussing divorce or that a parent was having an affair. He concluded that he could not positively identify any rational reason for appellant's acts.

---

1. All statutory references are RSMo 1994, unless otherwise indicated.

The state presented the testimony of Sarah Van Dyke, appellant's ex-girlfriend, as part of its rebuttal evidence. Van Dyke testified that appellant told her he thought his father was having an affair. She also testified that appellant told her he had come home one day when his mother was out of town and found an unknown woman there. Appellant also found a black mini skirt in the back shed. Appellant's counsel asked to approach the bench. Appellant's counsel argued that they were surprised by Van Dyke's testimony regarding the affair and were entitled to discovery if the state had the information. Back in chambers, appellant's counsel moved for a mistrial. Appellant's counsel argued that they had no prior notice that appellant had told anyone that he thought his parents were having an affair. In addition, appellant's counsel asked that if a mistrial was not granted, Van Dyke's testimony should be stricken. The trial court overruled appellant's motions. The trial court found that there had been no discovery violation. In overruling the motions the trial court stated:

> The defendant's motion for a mistrial will be denied. The court did consider striking the testimony of Ms. Van Dyke. As there appears not to have been a violation of Rule 25.03, the Court's opinion is that striking all of the testimony of Ms. Van Dyke, and, in particular, the testimony with regard to the alleged affair, would be inappropriate. The motion to strike the testimony will be denied also.

At the close of evidence, instructions, and argument by counsel, the jury found appellant guilty as charged. Appellant appeals.

Appellant raises four points on appeal, however, because the third point is dispositive of the case, we need not address the remaining points. In his third point on appeal, appellant argues the trial court erred in denying his motion to strike Van Dyke's testimony or for the declaration of a mistrial. Appellant alleges that the state was aware before trial that Dr. Rabun partially based his diagnosis of schizophrenia upon his failure to find any rational motive for the shooting. Appellant alleges that the state learned prior to trial that Van Dyke purported to have heard appellant make statements which were inconsistent with information that he had provided Dr. Rabun. Additionally, appellant alleges that the state withheld the information from defense counsel until the defense had rested, and called Van Dyke to testify regarding appellant's statements in rebuttal of the mental disease defense. Appellant argues that the state's suppression of the statements allegedly made by him to Van Dyke violated discovery rules and deprived him of his right to a fair trial and due process of law.

█ The trial court has the sound discretion to determine whether the state violated a rule of discovery. *State v. Carlisle*, 995 S.W.2d 518, 520 (Mo.App. E.D. 1999). If the trial court determines that a discovery violation occurred, then the trial court has the discretion to select an appropriate remedy. *Id.* "The trial court is in the best position to assess the prejudicial effect of the failure to disclose and to determine what remedy was necessary to alleviate any unfairness." *State v. Petty*, 967 S.W.2d 127, 137 (Mo.App. E.D.1998).

█ The purpose of discovery is to give a party a decent opportunity to prepare in advance of trial and to avoid surprise. *Id.* The rules of criminal discovery are not mere etiquette nor is compliance to be at the discretion of the parties. *Id.* The duty to disclose is a continuing one. *Id.* Rule 25.03(A)(2) requires the state to disclose any written or recorded statements

or the substance of any oral statements made by the defendant.

■ In the case at bar, the trial court overruled appellant's motion for mistrial or to strike Van Dyke's testimony and determined that the state did not violate the discovery rules. We find that the trial court abused its discretion when it found that the state did not violate the discovery rule. The state was required under Rule 25.03(A)(2) to disclose any written or recorded statements or the substance of any oral statements made by the defendant. The state failed to do so in this case with regard to the testimony of Van Dyke. The state, on appeal, concedes that it violated the discovery rule in failing to disclose the substance of appellant's oral statements pursuant to Rule 25.03(A)(2). However, the state argues that its failure to comply with discovery does not mandate a reversal of appellant's conviction because the late disclosure did not result in fundamental unfairness to appellant in that there is no indication that the late disclosure affected the outcome of the trial.

■ If it is determined that there has been a discovery violation, then we must determine whether the violation resulted in fundamental unfairness or bore a real potential for substantively altering the outcome of the case. *State v. Johnston*, 957 S.W.2d 734, 750 (Mo.banc 1997). "Fundamental unfairness occurs in discovery violation cases when the [s]tate's failure to disclose results in defendant's genuine surprise at learning of an unexpected witness or evidence and the surprise prevents meaningful efforts by the defendant to consider and prepare a strategy for addressing the state's evidence." *Id.*

■ In the instant case, we conclude that the discovery violation by the state resulted in fundamental unfairness to appellant. The state was aware of Dr. Ra-

bun's report filed before trial, in which Dr. Rabun noted that he asked appellant whether his parents were contemplating divorce or whether either of them might be having an affair. Dr. Rabun obtained negative responses to each of these questions. Dr. Rabun determined that appellant knew the nature and quality of his acts, but did not appreciate the wrongfulness of his conduct, in part because of the absence of any rational motive for shooting his parents. The state knew the content of the testimony of Van Dyke before trial. The state withheld the information that appellant allegedly had made contradictory statements from the defense until it called Van Dyke to testify in rebuttal of appellant's psychiatric defense. The defense, surprised by the testimony, moved for a mistrial or to strike the testimony. The trial court overruled the motions and determined that there was no discovery violation. However, the trial court, who was in the best position to assess the prejudicial effect of the failure to disclose, indicated that it had considered striking the testimony of Van Dyke, if it had discerned a violation of the discovery rule.

The discovery violation in this case materially affected the defense theory of mental illness. Appellant's main defense at trial is that he suffered from a mental illness, as a result, he was not able to appreciate the wrongfulness of his conduct in shooting his parents. Appellant presented the expert testimony of Dr. Rabun to support his contention. The state introduced the testimony of Van Dyke, which it withheld from appellant, to rebut Dr. Rabun's explanation that appellant had no rational motive for shooting his parents. The discovery violation affected Dr. Rabun's explanation of his diagnosis, and diminished his opinion before the jury that appellant did not know or appreciate the wrongfulness of his conduct. We find that fundamental unfairness occurred in this

**506**

case when the state's failure to disclose resulted in appellant's genuine surprise at learning of the testimony of Van Dyke and the surprise prevented meaningful efforts by appellant to consider and prepare a strategy for addressing the state's evidence.

Based on the foregoing, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.