**STATE of Missouri, Respondent,**

v.

**Christopher M. DELANCY, Appellant.**

**No. ED 89589.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 22, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Assistant Attorney

General, Jefferson City, MO, for respondent.

Gwenda R. Robinson, Assistant Public Defender, Saint Louis, MO, for appellant.

## OPINION

### GLENN A. NORTON, Judge.

Christopher Delancy appeals the judgment entered upon a jury verdict convicting him of robbery in the second degree. We affirm.

## I. BACKGROUND

On September 7, 2005, Delancy met Abdoulaye Diallo ("Victim"), a shoe salesman who buys shoes in bulk then resells them from his van, at a gas station. Victim gave Delancy his business card, which included Victim's cell phone number. Two days later, Delancy called Victim and told him he was interested in buying some shoes. Delancy asked Victim if they could meet to discuss a purchase. Delancy called Victim a second time to say that he had a friend who also wanted to buy shoes. Victim agreed to meet Delancy and his friend at an intersection in a St. Louis City neighborhood.

After Victim arrived, and as Delancy's friend began trying on shoes, two men came out of the dark from a nearby park. Before Victim could get a good look at the men, they grabbed him and started punching him. The men held Victim's arms while Delancy punched Victim in the head.

Victim was able to break free and run away while the group who attacked him took several cases of shoes from his van. After the group ran away, Victim returned to his van and noticed a cell phone lying on the ground under the van. The cell phone contained a list of recently called numbers, including calls to Victim's cell phone earlier that evening.

Police detectives used information from the numbers saved in the cell phone to locate Delancy. Delancy was identified by Victim as one of the people involved in the robbery, which led to his arrest, jury trial, and conviction of robbery in the second degree.

During voir dire, Delancy's counsel asked the prospective jurors whether testimony from one eye-witness would automatically be enough to convince them that Delancy was one of the perpetrators. The State objected on the basis that Delancy's counsel was getting into the facts of the case and seeking a commitment from the jurors. The trial court sustained the State's objection. Delancy's counsel then asked the jurors whether they would listen to the rest of the evidence in the case. All the prospective jurors indicated they would by raising their hands.

Later in the trial, while presenting its case-in-chief, the State asked two of its witnesses about the cell phone Victim found near his van after the robbery. First, the State questioned police officer Michael O'Keefe about his handling of the cell phone once Victim turned it over to him. Officer O'Keefe explained that he took the phone into evidence, packaged it and placed it in the property room.

The State then asked detective Terrell Robinson about his use of the cell phone to locate Delancy. Detective Robinson testified that he found an entry for "Granny" in the number index on the phone. He traced the phone number to the address of a woman named Carolyn Wade, and she gave him the names of her grandsons, including Delancy. Detective Robinson further testified that he was able to cross-reference Delancy's name with two of the phone numbers listed in the cell phone, including one identified as "home."

The State told Detective Robinson to "look at the phone for a minute" and asked

him if he had done a search of the phone to find incoming or recent calls. Delancy's counsel objected, stating "I'm going to object to this experiment. This is a total surprise to me. There is nothing in any reports about any of this. This experiment with the phone is a complete surprise." The trial court asked the State if the cell phone was listed as evidence in the police report. When the State answered that it was, the court overruled Delancy's objection. Detective Robinson proceeded to testify that the recent calls list showed two calls from the seized cell phone to Victim's cell phone around 8:30 p.m. the night of the robbery.

The State also mentioned the contents of the seized cell phone during closing argument. Delancy objected, arguing that the State was referring to facts not in evidence. The trial court overruled Delancy's objection.

At the conclusion of trial, the jury found Delancy guilty of robbery in the second degree. This appeal follows.

## II. DISCUSSION

### A. Restriction of Delancy's Voir Dire Examination

■ In his first point, Delancy argues that the trial court abused its discretion when it prevented him from asking prospective jurors whether they would automatically believe an eye-witness's identification testimony. According to Delancy, the trial court's ruling prejudiced him and deprived him of his rights to due process, a fair and impartial jury, and a fair trial because he was unable to discover whether the jurors could fairly and impartially consider whether Victim's identification of him was mistaken.

■ Because a defendant is entitled to a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments

of the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, he must be given the opportunity to adequately voir dire and identify unqualified jurors. *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998). "The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *Id.*

■ But the trial court is vested with the discretion to judge the appropriateness of specific questions and the conduct of voir dire. *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000). A trial judge is in the best position to determine whether a disclosure of facts on voir dire sufficiently assures the defendant of an impartial jury without permitting a prejudicial presentation of the evidence. *Id.* at 310–11. Thus, we will find reversible error in a trial court's ruling during voir dire when an abuse of discretion is found and the defendant can demonstrate a "real probability" that he was prejudiced by the abuse. *Id.* at 311.

Delancy relies on *Clark, supra,* and *State v. Finch,* 746 S.W.2d 607 (Mo.App. W.D.1988), to support his argument that the trial court erred in refusing to allow him to question prospective jurors about their willingness to believe eye-witness identification testimony. In both Clark and *Finch,* the respective reviewing courts reversed and remanded the defendants' convictions because the trial court unduly restricted their questioning on voir dire. *Clark,* 981 S.W.2d at 147–48; *Finch,* 746 S.W.2d at 612–13.

Specifically, in *Clark,* the trial court would not allow the defendant to ask any questions concerning the age of the murder victim, who was three-years-old. *Id.* at 145–46. The Missouri Supreme Court held that the trial court abused its discretion in preventing the defendant from dis-

covering whether any of the prospective jurors held a personal bias in a case involving a child victim. *Id.* at 147. In doing so, the Court explained that while, generally, "counsel may not try the case on voir dire," voir dire does require "the revelation of some portion of the facts of the case." *Id.* at 146–47. In particular, some inquiry regarding the critical facts of the case is essential to a defendant's right to discover bias and prejudice. *Id.* at 147. The Court described "critical facts" as those facts "with substantial potential for disqualifying bias." *Id.* According to the Court, the young age of a murder victim was such a "critical fact." *Id.*

In *Finch,* the defendant was on trial for attempted forcible rape and first degree sexual abuse. 746 S.W.2d at 609. During voir dire, the trial court precluded the defendant's counsel from asking the panel generally whether they would automatically believe the testimony of an alleged rape victim merely because she said a rape was attempted. *Id.* at 612–13. The Court of Appeals held that the trial court's ruling unduly restricted the defendant's voir dire examination because it interfered with the defendant's right to discover bias or prejudice on the part of the prospective jurors. *Id.* at 613. The Court noted that where a prospective juror enters the trial of a case with the formed disposition to give preferential belief to a generic class, the bias of credibility contrary to the interest of a litigant will disqualify the person to serve as a juror. *Id.* Thus, the defendant should have been given the opportunity to discover whether any of the jurors had a predisposition to generally accept as true the testimony of alleged rape victims. *Id.*

We find that both cases are distinguishable. Unlike the victims in *Clark* and *Finch,* the victim in this case is not part of a particular class of witnesses who may engender bias in favor of their testimony or prejudice against the defendant. Although the fact that Victim was an "eyewitness" to Delancy's alleged actions may have made the case more difficult to defend, this obstacle to the defense did not rise to the level of a critical fact that necessitated allowing the defense to probe the venire panel. *See Oates,* 12 S.W.3d at 311–12 (distinguishing *Clark* because fact that defendant shot victim in the back of the head, while a circumstance surrounding the case that posed substantial obstacles to the defense, was not a critical fact).

■ Delancy's voir dire question instead appears to be more of an improper attempt to obtain a commitment from the prospective jurors. "It is well established in Missouri that counsel may not extract a commitment from a venireperson to a particular course of action." *State v. Twitty,* 793 S.W.2d 561, 565 (Mo.App. E.D.1990). Moreover, we agree with the State that Delancy has not demonstrated prejudice since he was still permitted to ask the jury whether they would listen to the rest of the evidence in the case. We find no error in the trial court's ruling. *See id.* (finding no error where trial court sustained prosecutor's objection to defendant's question to venire panel, "How many persons feel that an eyewitness identification is always correct?," after defendant already asked panel whether they would be able to follow the law, take into consideration all the evidence, and whether they would find someone guilty just because a witness pointed them out as a guilty person). Delancy's first point is denied.

## B. Admission of the Call Log Contained in the Cell Phone

In his second point, Delancy argues that the trial court erred in allowing Detective Robinson to testify about numbers stored in the incoming or recent call lists contained in the State's Exhibit # 4, the cell phone Victim found after the robbery. Al-

though the State disclosed the cell phone itself in response to discovery requests, the State did not disclose the data recovered from the phone. Delancy first contends that the State's failure to disclose the recent call log was a discovery violation under Rule 25.03(A).[1] Secondly, Delancy asserts that the discovery violation resulted in fundamental unfairness because he was unfairly surprised by the disclosure of such "new evidence" during trial. We disagree.

The determination of whether the State violated a rule of discovery is within the sound discretion of the trial court. *State v. Greer*, 62 S.W.3d 501, 504 (Mo.App. E.D.2001). The remedy for a discovery violation is also within the discretion of the trial court. *State v. Scott*, 943 S.W.2d 730, 735 (Mo.App. W.D.1997). An abuse of discretion occurs where the fashioned remedy results in a fundamental unfairness to the defendant. *Id.* Fundamental unfairness arises when there is a "reasonable likelihood that an earlier disclosure of the requested evidence would have affected the result of the trial." *Id.* at 735–36.

### 1. No Discovery Violation Occurred

Rule 25.03(A) requires the State, upon written request from the defendant, to disclose material and information within its possession or control, including any papers, documents or objects, which the State intends to introduce into evidence at trial, or which were obtained from or belong to the defendant. *See* Rule 25.03(A)(6). Delancy concedes that the State timely disclosed the cell phone in compliance with Rule 25.03(A). Additionally, he does not argue that the State possessed a separate document describing or listing the information contained within the cell phone that it failed to timely disclose. Instead, Delancy contends that the State violated Rule 25.03(A) when it presented evidence of the call log contained in the cell phone. Delancy argues that, even in the absence of separate phone records, the call log contained in the cell phone was distinct, discoverable information. We disagree.

While there are instances where a cell phone's contents are treated as a separate source of information from the actual cell phone, *see, e.g., U.S. v. Finley*, 477 F.3d 250, 260 (5th Cir.2007) (considering whether contents of properly seized cell phone were subject to search absent a warrant for the cell phone's contents), in the context of discovery, we find that disclosure of the actual cell phone was sufficient to give Delancy the opportunity to adequately prepare in advance of trial and avoid surprise with regard to easily accessible and displayable information which was stored within the cell phone and was not separately documented. *See Greer*, 62 S.W.3d at 504 (stating that "[t]he purpose of discovery is to give a party a decent opportunity to prepare in advance of trial and to avoid surprise").[2] Because the call log was easily accessible and displayable on the cell phone, and was not separately documented, it is not subject to independent disclosure. Thus, no discovery violation occurred.

---

1. All references to Rules are to Missouri Supreme Court Rules (2008).

2. We are mindful that there may be instances where information stored in a phone is no longer accessible through simple commands (such as accessing a list of recent calls, missed calls, incoming calls, or text messages) and can no longer be displayed. To the ex-

tent the data at issue is no longer displayable and requires additional means for recovery, it would be subject to Rule 25.03, especially since the data recovered would likely be recorded separately from the particular cell phone in such circumstances. In this case, however, the cell phone's call log was displayed directly on the phone.

### 2. Delancy has Failed to Demonstrate Fundamental Unfairness Occurred as a Result of the Alleged Discovery Violation

■ We further find that Delancy failed to demonstrate fundamental unfairness. To the extent Delancy claims he was surprised by the State's use of the record of Victim's phone number in the cell phone, he has not shown he would have dealt with the record differently had the State disclosed it earlier. Delancy also fails to explain how Detective Robinson's testimony that Victim's phone number was included in the cell phone's recent calls list somehow altered his ability to prepare for his defense. Because Delancy has failed to show that there is a reasonable likelihood that an earlier disclosure of the call log would have affected his defense or the result of the trial, he has failed to demonstrate that fundamental unfairness occurred as a result of the alleged discovery violation. *See State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc 1989) (stating that where a defendant is surprised by opposing evidence at trial but deals with the evidence in precisely the same manner as if he had been prepared, there is no reason to exclude the evidence based on a discovery violation); *Greer, supra.*

### 3. Conclusion as to the Admission of the Call Log

The trial court did not abuse is discretion in allowing the State to elicit testimony about the call log contained in the cell phone for two reasons. First, no discovery violation occurred because the State's timely disclosure of the actual cell phone was sufficient to give Delancy the opportunity to adequately prepare in advance of trial and avoid surprise with regard to the call log, which was easily accessible and displayable on the cell phone, and was not separately documented. Secondly, Delancy has failed to demonstrate fundamental unfairness occurred as a result of the alleged discovery violation. Delancy's second point is denied.

### C. References to the Call Log During the State's Closing Argument

In his third and final point, Delancy argues that the trial court abused its discretion when it allowed the State, over his objection, to discuss the outgoing calls made from the cell phone. He asserts that the outgoing calls were facts not in evidence and thus an improper subject for closing argument.

■ The trial court has considerable discretion in controlling closing arguments. *State v. Bearden*, 748 S.W.2d 753, 755 (Mo.App. E.D.1988). While the State has the right to argue the evidence and the reasonable inferences from that evidence, it may not argue matters outside the scope of the pleadings and the evidence. *Peterson v. State*, 149 S.W.3d 583, 587 (Mo.App. W.D.2004).

Delancy bases his final argument that the State argued about facts not in evidence on the erroneous premise in his second point that the list of outgoing calls contained in the cell phone was separate evidence that had to be admitted independently. We have already found that the trial court did not abuse its discretion in admitting the call log contained in the cell phone. Because the State was commenting on facts that were properly admitted, Delancy's argument is without merit. His third point is denied.

### III. CONCLUSION

The judgment is affirmed.

ROY L. RICHTER, P.J., and CLIFFORD H. AHRENS, J., concur.