THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRIS GROGAN, Appellant. [816 NYS2d 93]—

Appeal by the defendant from a judgment of the Supreme

Court, Kings County (Tomei, J.), rendered March 15, 2004, convicting him of rape in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

In 1994 the complainant was raped in the stairwell of her apartment building. The assailant kept his face masked during the assault. The complainant reported the assault to the police, and she reviewed photographs, but was unable to identify the assailant. The complainant was later examined at a hospital, and a rape kit was prepared.

In 2002 an indictment charging, inter alia, rape in the first degree was filed against the defendant after the DNA profile created from the rape kit matched a DNA profile in a DNA indexing system known as the Combined DNA Index System (hereinafter CODIS).

The matter was tried before a jury, which heard testimony from, inter alia, the complainant, her brother, and her examining physician. In addition, the court admitted, as business records, the DNA reports produced from the rape kit. These DNA reports were admitted through the testimony of a director at Cellmark Laboratories (hereinafter Cellmark) and through a criminalist at the Office of the Chief Medical Examiner (hereinafter OCME).

The court also admitted, as a business record, a DNA report prepared on the defendant's blood. This sample was taken at the instigation of the New York City Police Department and the Office of the Kings County District Attorney after the defendant was identified by the earlier DNA report and after he was indicted. This sample was then sent to OCME for preparation of a DNA profile, so that it could be compared with the DNA profile produced from the rape kit. This DNA report prepared from the defendant's blood was introduced through the testimony of the OCME criminalist.

At the conclusion of the trial the defendant was convicted of rape in the first degree.

Contrary to the defendant's argument, the Supreme Court properly denied his CPL 330.30 motion to set aside the verdict on the theory that the indictment was jurisdictionally defective as the prosecution occurred outside of the five-year statute of limitation. Although the indictment was filed on September 24, 2002, eight years after the rape, the defendant's whereabouts were continuously unknown and continuously unascertainable by the exercise of reasonable diligence until the defendant's DNA profile from the rape kit was matched to the DNA profile

in the CODIS databank (*see People v Seda,* 93 NY2d 307, 312 [1999]; *People v Lloyd,* 23 AD3d 296 [2005], *lv denied* 6 NY3d 755 [2005]; *People v Harrison,* 22 AD3d 236, 237 [2005], *lv denied* 6 NY3d 754 [2005]; CPL 30.10 [4] [a] [ii]).

Moreover, the Supreme Court properly admitted, as business records, the DNA reports produced from the rape kit. Although neither the Cellmark director nor the OCME criminalist performed the testing, their testimony revealed their familiarity with the business practices and procedures of their respective offices, and thus they properly set forth a foundation for admission of the records (*see People v Cratsley,* 86 NY2d 81, 89 [1995]; *People v Bones,* 17 AD3d 689, 690 [2005]; *McClure v Baier's Automotive Serv. Ctr.,* 126 AD2d 610 [1987]).

Contrary to the defendant's contention, admission of the DNA reports created from the rape kit did not violate his right to confrontation because business records are "by their nature . . . not testimonial" (*Crawford v Washington,* 541 US 36, 56 [2004]; *cf. People v Pacer,* 6 NY3d 504 [2006]).

With respect to the report of the DNA test performed on the defendant's blood taken after his indictment, we disagree with the defendant's contention that it was not admissible as a business record because it was prepared in anticipation of litigation (*cf. People v Rogers,* 8 AD3d 888 [2004]). As the Court of Appeals has said, "The People have no power to dictate the contents or practices within OCME . . . [and] Medical Examiners have no authority to gather evidence with an eye toward prosecuting a perpetrator" (*People v Washington,* 86 NY2d 189, 193 [1995]). Moreover, the defendant was afforded the opportunity to cross-examine the OCME criminalist as to the preparation, authenticity, and methodology of the testing and the result (*see People v Atkins,* 273 AD2d 11, 12 [2000]; *People v Driscoll,* 251 AD2d 759 [1998]). Goldstein, J.P., Luciano, Rivera and Fisher, JJ., concur.