■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWAIN MEEKINS, Appellant. [828 NYS2d 83]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Tomei, J.), rendered June 8, 2004, as amended on January 3, 2005, convicting him of sodomy in first degree, sexual abuse in the first degree, and robbery in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment as amended, is affirmed.

At trial, the prosecution offered into evidence, inter alia, a report created by an independent private laboratory containing the results of DNA testing conducted on samples taken from the complainant's rape kit. The private laboratory was accredited by the American Society of Crime Laboratory Directors-Laboratory Accreditation Board, the New York State Department of Health, and the Texas Department of Public Safety. The DNA report was offered through the testimony of Judith Floyd, an expert in DNA analysis and forensic biology, employed by the private laboratory, and the testimony of Kyra Keblish, an expert in DNA analysis and forensic biology employed by the Medical Examiner's Office of the City of New York.

Floyd supervised the employees of the private laboratory who conducted the tests performed upon the samples from the rape kit. Floyd performed a final review of the test results before submitting them to the Medical Examiner's Office. She did not personally engage in any of the actual testing procedures.

Keblish testified that the report was "prepared in the regular course of business of the medical examiner's office and its contracted agencies." According to Keblish, it was "the regular course of business for the medical examiner's office, as well as its contracted agencies, to make and keep such records." The reports were prepared "at or near the time the testing and analysis is done." Additionally, the persons who prepared the reports "were . . . under a business duty to do so truthfully

and accurately." Keblish testified that she was the custodian of, inter alia, the report created by the independent private laboratory.

Contrary to the defendant's contention, the report of the private laboratory, which was based upon the testing supervised by Floyd, was properly admitted under the business records exception to the hearsay rule. Although neither Floyd nor Keblish performed the testing, their testimony revealed their familiarity with the business practices and procedures of the private laboratory, and thus they properly set forth a foundation for admission of the records (*see People v Cratsley,* 86 NY2d 81, 89 [1995]; *People v Grogan,* 28 AD3d 579 [2006]; *People v Bones,* 17 AD3d 689, 690 [2005]; *People v Antongiorgi,* 242 AD2d 578 [1997]).

Contrary to the defendant's contention, admission of the private laboratory's DNA report created from the rape kit did not violate his right to confrontation, because business records are "by their nature . . . not testimonial" (*Crawford v Washington,* 541 US 36, 56 [2004]; *see People v Grogan, supra*).

The defendant's contention that the evidence adduced at trial regarding a blood sample taken from him should have been stricken because of a lack of evidence that it was taken by a licensed physician, is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Simon,* 6 AD3d 733 [2004]; *People v Zimmerman,* 309 AD2d 824 [2003]). In any event, the defendant's motion at trial essentially was an untimely motion to suppress, unsupported by adequate explanation for the delay, pursuant to CPL 255.20. Defense counsel was present at the time the defendant's pretrial blood sample was taken. Yet, the defendant did not provide any explanation for why he waited until the prosecution introduced the testimony of a detective investigator, regarding her recollection of who drew the defendant's blood sample, to move the court to strike any evidence relating to the blood sample because it was not taken by an authorized professional (*see People v Delacruz,* 271 AD2d 452 [2000]; *People v Ramirez,* 243 AD2d 734 [1997]; *People v Molling* 238 AD2d 915, 916 [1997]).

Moreover, the defendant's contention that he was entitled to have his blood drawn only by a licensed physician is without merit. Pursuant to CPL 240.40 (2) (b) (v), the court may order a defendant to "Permit the taking of samples of blood . . . from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury thereto." Here, the court did not order that a licensed physician extract the defendant's blood. Rather, it merely directed that the procedure be performed by "qualified medical personnel."

The defendant's reliance on the requirement of Vehicle and Traffic Law § 1194 that only a doctor, nurse, or physician's assistant may draw blood from a person suspected of driving while intoxicated is inapposite. This statute provides that, at the direction of a police officer, such a suspect may be requested to submit to a chemical blood test where the blood may be drawn by, among others, "a physician, a registered professional nurse or a registered physician's assistant" (Vehicle and Traffic Law § 1194 [1] [b]; [4] [a] [1] [i]). Here, the defendant was compelled to give a blood sample by a court order pursuant to CPL 240.40 (2) (b) (v), which does not specify who is authorized to take a blood sample

Instead, the court specified only that the defendant's blood be drawn by "qualified medical personnel." Since the detective investigator present during the procedure testified that a "medical technician" drew the defendant's blood sample, the prosecution adduced sufficient evidence to meet the burden imposed by CPL 240.40 and the court's order. The defendant does not allege that he suffered "an unreasonable [bodily] intrusion . . . or a risk of serious physical injury" as a result of the professional medical status of the person who drew his blood (CPL 240.40 [2] [b] [v]), or that he was otherwise prejudiced by the taking of his blood by a medical technician rather than by a licensed physician. Thus, the court properly denied his motion to strike the blood sample-related evidence.

The defendant's contention that he was unduly prejudiced by the admission of evidence and comments by the prosecutor that his DNA profile was maintained in a computer database is without merit. The court granted the defendant's motion during the prosecutor's opening statement to limit her comments regarding the database to exclude the use of the term "known individuals." The prosecution's submission of evidence of the database was reasonably necessary to explain to the jury the four-year gap between the commission of the rape and the defendant's apprehension. In addition, the court appropriately instructed the jury, inter alia, that the attorneys' comments were not evidence, and not to speculate regarding how or why the defendant's DNA profile came to be part of a database of DNA profiles. There is a presumption that juries follow a court's instructions (see People v Richardson, 81 NY2d 303, 320; People v Guzman, 76 NY2d 1, 7 [1990]; People v Sullivan, 68 NY2d 495, 502 [1986]; People v Root, 68 AD2d 8, 11 [1979]). Adams, J.P., Ritter, Mastro and Lifson, JJ., concur.