STATE of Missouri, Respondent,

v.

**Blake D. MCMILIAN, Appellant.**

**No. WD 68123.**

Missouri Court of Appeals,
Western District.

July 31, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 2009.

Application for Transfer Denied
Nov. 17, 2009.

Laura G. Martin, Esq., Kansas City, MO, for appellant.

Chris Koster, Esq., and Evan J Buchheim, Esq., Jefferson City, MO, for respondent.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, C.J., and HAROLD L. LOWENSTEIN, J.

ALOK AHUJA, Judge.

Blake McMilian appeals his conviction of murder in the first degree and forcible rape. He asserts six Points Relied On, in which he challenges: the sufficiency of the evidence; the court's instruction on juror note-taking; the qualifications of two prosecution witnesses to testify to the time lapse between the deposit of McMilian's sperm in the victim's vagina and her death; the admission of ˙testimony that McMilian was identified as a suspect based on the presence of his DNA profile in a statewide database, and the jury's purported conclusion that he had committed other, uncharged offenses due to his presence in the database; and the prosecution's cross-examination of one of McMilian's witnesses concerning that witness' history of mental health issues and treatment.

We affirm. With one exception, we have determined that a published opinion addressing McMilian's arguments would have no precedential value. We have accordingly provided the parties with an unpublished memorandum setting forth the reasons for this disposition. *See* Rule 30.25(b).

One issue does deserve discussion in a published opinion, however.

The rape and murder of which McMilian was convicted occurred in 1984; McMilian was identified twenty years later, in 2004, when DNA was extracted from a vaginal swab which had been collected from the victim at the time of the crimes. A prosecution witness testified that the DNA profile developed from the sample collected from the victim matched McMilian's profile, which was contained in a statewide DNA database maintained by the Missouri State Highway Patrol.

McMilian's fourth Point Relied On argues that "the trial court erred in overruling [ ][his] objections and in allowing the state to elicit evidence that there was a 'hit' from a 'statewide DNA database,'" because it allowed the jury to infer that "McMilian's DNA profile was contained in that database because he had previously committed criminal offenses."

Prior to trial, McMilian filed a motion *in limine* requesting that the State be barred from making any reference to the statewide DNA database, otherwise known as the "CODIS system," [1] because, "[i]f the State refers to a 'cold hit' through the CODIS system, the jury will infer that [McMilian] has one or more prior convictions." The trial court denied the motion on the basis that "there has to be some explanation how this [DNA] match occurred," and that "the general public is [not] aware of the DNA requirements for convictions or for convicts." The court did, however, preclude the State from making any direct reference to the fact that McMilian's DNA was in the statewide system as the result of his prior criminal convictions. The court also required the State to elicit testimony that the statewide system contained DNA from individuals other than just convicted felons.

■ At trial, Jennifer Howard, a forensics specialist for the Kansas City Crime Laboratory, testified that a DNA profile was developed in 2004 from the swab taken from the victim, and that this profile was run through the "Missouri Statewide DNA Database." She testified that the search of the database identified McMilian, in a "match report [she received] back from the highway patrol. They're the ones who house the state database...." Consistent with the trial court's *limine* ruling, no reference was made to the reason McMilian's DNA was in the database. Further, Howard agreed "that the statewide database or the DNA database here that we work with, includes a wide variety of people"; specifically, "the group includes victims of crime, government employees, and other individuals." [2]

■ The trial court's decision whether to admit evidence will not be disturbed unless a clear abuse of discretion is shown. *State v. Williams,* 976 S.W.2d 1, 2 (Mo. App. W.D.1998). "The decision to admit evidence is an abuse of discretion where it is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (internal quotation marks omitted).

Generally, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such

---

**1.** "CODIS" refers to the Combined DNA Index System originally developed by the Federal Bureau of Investigation Laboratory.

**2.** The State argues that McMilian waived his appellate argument because he did not object early enough in Howard's examination. However, McMilian objected before Howard named him as the individual identified from the statewide database, which we deem sufficient in the circumstances.

The State further argues that McMilian's attorney waived this argument by "suggest[ing] that this issue could be resolved if the prosecutor were to adduce certain testimony from the witness showing that the database contained DNA samples obtained from a wide variety of sources." When the trial court grants a defendant all the relief requested, any claim of error is waived on appeal. *State v. Kaiser,* 139 S.W.3d 545, 559–60 (Mo. App. E.D.2004). But at the end of the bench conference addressing this issue, the trial court made clear that, despite the limited relief it had ordered, McMilian's "objection still stands ... [o]n the inference that the database consists of persons in the criminal justice system only."

crimes. However, this rule applies only to evidence that shows that the defendant committed, had been accused of, has been convicted of, or definitely was associated with the crime. Where the defendant's involvement in the other crime is speculative, when the defendant is not identified as the perpetrator, or when the other crime is attributed to someone other than the defendant the necessary connection does not exist for application of the rule.

*State v. Bickham*, 917 S.W.2d 197, 199 (Mo.App. W.D.1996) (citations omitted); *see also, e.g., State v. Sheridan*, 188 S.W.3d 55, 65 (Mo.App. E.D.2006) (" '[v]ague remarks cannot be characterized as clear evidence to associate defendant with other crimes' "; citation omitted); *State v. Tyra*, 153 S.W.3d 341, 347 (Mo.App. S.D.2005) (" 'The necessary nexus between the defendant and the uncharged crime does not exist when the defendant's involvement in the other crimes is speculative, when the defendant is not identified as the perpetrator, or when the other crime is attributed to someone other than the defendant.' "; citation omitted). "The defendant bears the burden of showing that the challenged testimony constituted evidence of other crimes." *State v. Wallace*, 952 S.W.2d 395, 397 (Mo.App. W.D.1997).

■ In *State v. Morrow*, 968 S.W.2d 100, 111–12 (Mo. banc 1998), the Missouri Supreme Court held that "[f]ingerprint cards, in and of themselves, do not constitute evidence of a prior crime," and that a trial court does not abuse its discretion in allowing their admission when they do not "mention any crimes." *Id.* Admission of fingerprint cards is unobjectionable when "[a]n examination of the challenged testimony reveals that the [witness] gave no indication that defendant was fingerprinted pursuant to an arrest or conviction of a crime . . . [and][t]he [ ] testimony was neutral." *State v. Perryman*, 851 S.W.2d 776, 779 (Mo.App. E.D.1993).[3]

■ DNA profiles are difficult to distinguish from fingerprint cards in this context. In both cases, the State has compiled databases containing identifying information. In both cases, identifying evidence from an unknown perpetrator can be compared to the database, enabling police to find a lead where none previously existed. In cases where a "hit" or match is made, the State needs to be able to explain how a particular individual became a suspect, especially where, as here, a considerable period of time has passed since the offense. In both cases, a possibility exists that the public may assume that this identifying information is collected primarily or exclusively from persons arrested for, and/or convicted of, crimes.

In light of *Morrow* and the circumstances here, the mere fact that McMilian's DNA profile was present in a statewide database did not constitute an improper reference to other, uncharged crimes. The evidence was necessary to explain the significant passage of time between the offense and McMilian's identification; no mention was made of the reasons why his DNA profile was initially collected or added to the database; and testimony was solicited specifically indicating that the database in-

---

**3.** The same analysis applies to mugshots. *See, e.g., State v. Nash*, 621 S.W.2d 319, 323 (Mo.App. W.D.1981) (rejecting appellant's argument that "the court erred in refusing to grant a mistrial when the police officer who arrested him stated that he recognized [Appellant] because he looked exactly like the mug- shot they had. . . . [Appellant] urges this court to simply assume that mugshots are evidence of the commission of prior crimes. . . . 'Mugshots' are in themselves neutral and do not constitute evidence of prior crimes and offenses.").

cludes DNA profiles of persons other than those arrested for, or convicted of, crimes.[4]

Given the State's limited, neutral reference to the presence of McMilian's DNA profile in the statewide DNA database, the trial court did not abuse its discretion in admitting this evidence at trial. McMilian's fourth Point is denied.

## Conclusion

For the reasons given above, and in the Rule 30.25(b) Memorandum provided to the parties, the judgment of the circuit court is affirmed.

All concur.

**4.** Court in other states have reached the same conclusion where the references to the presence of a defendant's DNA profile in a governmental database were brief and neutral, and where reference to the database match was necessary to explain defendant's identification and arrest many years after an offense occurred. *See People v. Jackson,* 232 Ill.2d 246, 328 Ill.Dec. 1, 903 N.E.2d 388, 398–403 (2009) (six-year gap between crime and identification of defendant); *People v. Meekins,* 34 A.D.3d 843, 828 N.Y.S.2d 83, 86 (App.Div. 2006) (four years between offense and defendant's arrest), *aff'd sub nom. People v. Rawlins,* 10 N.Y.3d 136, 855 N.Y.S.2d 20, 884 N.E.2d 1019 (2008), *cert. denied,* — U.S. —, 129 S.Ct. 2856, 174 L.Ed.2d 601 (2009).