**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Paul Michael HARLAND,**
**Defendant–Appellant.**

**No. 06CA0782.**

Colorado Court of Appeals,
Div. I.

July 8, 2010.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Paul Michael Harland, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree burglary, sexual assault on a child, enticement of a child, attempted sexual assault on a child, and two counts of indecent exposure. We affirm.

## I. Background

On July 16, 2003, J.E. (then age ten) and her younger brother (then age four) were home alone and decided to hold a garage sale. During the garage sale, an unknown man approached them and asked for directions and for something to drink. J.E. went inside the house to get the man an iced tea and the man followed her inside. He then asked J.E. for a tissue, to use the telephone, and for some lotion. J.E. went into her mother's bedroom to look for lotion, and, again, the man followed her. He then sexually assaulted J.E. in the bedroom. J.E.'s brother witnessed a portion of the assault.

Despite the detailed description of the assailant provided by J.E., the police did not have any productive leads as to his identity until October 2003, when they ran a DNA profile obtained from J.E.'s clothes and articles in her home through two DNA databases. The second database identified defendant's DNA profile as a match for the DNA collected at the scene, and, after further investigation, authorities arrested and charged defendant.

Following the convictions for the offenses noted above, the district court adjudicated defendant a habitual offender. The court sentenced defendant to a total of 108 years to life in prison.

## II. Discussion

### A. Mention of DNA Databases

Defendant contends that the district court erred in denying his motion in limine to exclude any reference to the use of DNA databases to identify him as a suspect. We are not persuaded.

Immediately before the trial began, defendant's counsel moved for an order prohibiting any prosecution witness from testifying that defendant had been identified as a suspect because DNA collected at the victim's house matched defendant's DNA profile in a DNA database. Defendant's counsel argued that any mention of a DNA database would "lead the jury to speculate that [defendant] has a criminal history," and therefore should be excluded as other act evidence under CRE

404(b). The court ruled that the database should not be mentioned in voir dire or opening statement, but reserved ruling on whether a witness could mention it.

During voir dire, defendant's counsel challenged the reliability of DNA testing and suggested that those involved in the testing process were biased. Following a discussion between counsel and the court, during which the prosecutor argued that testimony about the database match was relevant to show how defendant became a suspect, the court ruled the evidence was relevant to the credibility of the investigator who conducted the DNA analysis, Agent Arndt, and would not present a danger of unfair prejudice.

At trial, Agent Arndt testified that he obtained and tested DNA from J.E.'s clothes and articles in the home. He checked the resulting DNA profile against known samples by running it through a "database," but did not obtain a match. He then ran it through a second "larger database," which showed that defendant's DNA profile was a match. He did not say how or from whom the DNA profiles in either database were obtained.

We review a district court's ruling admitting evidence for an abuse of discretion. *People v. Beilke*, 232 P.3d 146, 151 (Colo.App. 2009); *People v. Gallegos*, 226 P.3d 1112, 1116 (Colo.App.2009). A court abuses its discretion in this context where its ruling is manifestly arbitrary, unreasonable, or unfair. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009); *Beilke*, 232 P.3d at 151. In reviewing whether a court abused its discretion in assessing the evidence's relevance, we afford the evidence its maximum probative value and its minimum prejudicial effect. *Masters v. People*, 58 P.3d 979, 1001 (Colo.2002); *People v. Lowe*, 660 P.2d 1261, 1264 (Colo.1983), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo.1984).

■ Initially, we reject defendant's contention that Agent Arndt's testimony that he ran the DNA profile through the two DNA databases was evidence of prior criminality subject to CRE 404(b) because the jurors were likely to assume that such databases comprise DNA profiles of persons convicted of crimes. Evidence is subject to exclusion under CRE 404(b) only if it is offered to prove the defendant acted in conformity with a character trait. CRE 404(b). Here, the prosecution clearly did not offer the evidence for that purpose. The issue, therefore, is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* CRE 403. Though defendant contends that it was, we reject that contention as well.

■ Agent Arndt's testimony was relevant, for two reasons. First, it explained how defendant became a suspect after scores of leads had not panned out over several months, an important point because (1) absent the explanation, the jury would be left to speculate as to how defendant became a suspect, and (2) defendant's defense was mistaken identity. *See People v. Jackson*, 232 Ill.2d 246, 328 Ill.Dec. 1, 903 N.E.2d 388, 397–400 (2009) (testimony of a match between DNA taken from evidence and the defendant's DNA profile in a database was relevant to show how the defendant became a suspect); *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind.Ct.App.2009) (same); *State v. McMilian*, 295 S.W.3d 537, 540–41 (Mo.Ct. App.2009) (same); *People v. Meekins*, 34 A.D.3d 843, 828 N.Y.S.2d 83, 86 (N.Y.App. Div.2006) (same), *aff'd sub nom. People v. Rawlins*, 10 N.Y.3d 136, 855 N.Y.S.2d 20, 884 N.E.2d 1019 (2008); *cf. People v. Samuels*, 228 P.3d 229, 243–44 (Colo.App.2009) (a photograph showing the defendant "throwing gang signs" was relevant to establish the defendant's identity and to link the defendant to the evidence). Second, it was relevant to show the thoroughness of the police investigation and analysis, and therefore buttressed the credibility of Agent Arndt's testimony. This was important because, during voir dire and trial, defendant's counsel challenged the reliability of the DNA analysis, partly by suggesting that the investigator was biased.

Agent Arndt's testimony did not create any significant danger of unfair prejudice. Agent Arndt only mentioned the databases briefly, and did not testify as to how defendant's DNA profile came to be in the second database. No evidence was presented as to how any individual's DNA profile might come

to be in either DNA database, and no evidence was presented that defendant had previously engaged in any criminal activity. We therefore reject defendant's assertion that Agent Arndt's testimony mentioning the DNA databases necessarily led the jury to speculate that defendant had prior criminal convictions. Under the circumstances here, any inference of such prejudice is itself speculative. *See Jackson,* 328 Ill.Dec. 1, 903 N.E.2d at 402–03; *Atteberry,* 911 N.E.2d at 608–09 (evidence that the defendant's DNA profile was contained in a national DNA database was not evidence of prior bad acts); *McMilian,* 295 S.W.3d at 540 (mere mention of the fact the defendant's DNA profile was in a database was not "an improper reference to other, uncharged crimes"); *cf. People v. Jackson,* 304 Ill.App.3d 883, 238 Ill.Dec. 257, 711 N.E.2d 360, 368–69 (1999) (technician's testimony that the defendant's fingerprints were in a computer database was not prejudicial; suggestion the jury would infer prior criminal activity was speculative).[1]

We are not persuaded to the contrary by defendant's insistence that the district court's failure to ask Agent Arndt two jury questions concerning the DNA databases encouraged such speculation. Neither question indicated that the jury believed that such databases comprise profiles of individuals convicted of crimes. And we observe that defendant's counsel expressly objected to asking the first question and stood silent when the prosecutor indicated that the second question should not be asked. Defendant, therefore, is in no position now to challenge the court's refusal to ask the questions. *Cf. People v. Collins,* 730 P.2d 293, 304–05 (Colo.1986) (where the defendant's counsel objected to a jury instruction at trial, the defendant could not complain on appeal that the instruction should have been given).

In sum, we conclude that the district court did not abuse its discretion in allowing Agent Arndt to mention the DNA databases.

### B. Sufficiency of the Evidence

■ Defendant also contends that there was insufficient evidence to prove that he was the perpetrator. Again, we are not persuaded.

When assessing the sufficiency of the evidence to support a conviction, we must determine whether a rational fact finder could accept the relevant evidence, taken as a whole and in the light most favorable to the prosecution, as substantial and sufficient to support a finding of the defendant's guilt beyond a reasonable doubt. *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010); *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005); *People v. Plancarte,* 232 P.3d 186, 191–92 (Colo.App. 2009). We give the prosecution the benefit of every inference that reasonably can be drawn from the evidence. *Clark,* 232 P.3d at 1292; *People v. Barrus,* 232 P.3d 264, 270–71 (Colo.App.2009).[2]

Here, defendant's DNA was found on J.E.'s undergarments and on tissues located inside J.E.'s home, places it was extremely unlikely to be if defendant was not the perpetrator because J.E. did not know defendant and he had not previously been in J.E.'s home. *Cf. Clark,* 232 P.3d at 1292–94 (DNA evidence supported conviction where it was found on a sweatshirt inside the victim's home); *People v. Angel,* 701 P.2d 149, 151 (Colo.App.1985) (evidence was sufficient where the defendant's fingerprint was found inside a burglarized home into which he had never been invited). There is no reasonable explanation for the presence of defendant's DNA in the places it was found other than that it was deposited during the commission of the crimes.

---

1. We express no view as to whether a court should give the jury a limiting instruction when allowing such evidence. *See Jackson,* 328 Ill. Dec. 1, 903 N.E.2d at 402 (suggesting such an instruction may be appropriate). Defendant did not request such an instruction.

2. In their principal briefs, both defendant and the People ask us to apply a sufficiency of the evidence test articulated in *People v. Clark,* 214

P.3d 531 (Colo.App.2009), *aff'd on other grounds,* 232 P.3d 1287 (Colo.2010). Under that test, DNA evidence must be corroborated by other evidence that the defendant was the perpetrator to support the conviction. But the supreme court rejected that test on certiorari review in *Clark,* holding that the ordinary sufficiency of the evidence test applies to cases involving DNA evidence. 232 P.3d at 1292–93.

And, contrary to defendant's assertion, the People presented other evidence proving defendant was the perpetrator. J.E. provided the police with a detailed physical description of the assailant. She described him as a white male with brown hair and a short beard, five feet eight inches to five feet ten inches tall, and with a tattoo on his left arm of a bear with balloons and tattoos on his legs. She was also able to give an approximate weight. Defendant matched each of these descriptors when he was arrested. *Cf. Clark*, 232 P.3d at 1293–94 (DNA evidence and other circumstantial evidence, including the victim's description of her attacker, was sufficient to support the defendant's conviction).[3]

■ We reject defendant's argument that J.E.'s description of the teddy bear tattoo was not probative of identity. Though such a tattoo may not be unique in the sense that other persons may have similar tattoos, it is still evidence of identity because of its nature and its location on defendant. Any discrepancy between J.E.'s description of the tattoo as an outline and the evidence that defendant's tattoo has shading was minor, and was for the jury to weigh. *Clark*, 232 P.3d at 1292–93; *Plancarte*, 232 P.3d at 191–92. Moreover, the tattoo evidence cannot be viewed in isolation, but must be considered in light of the other evidence of identity noted above. *See Clark*, 232 P.3d at 1291 (evidence must be viewed as a whole); *Barrus*, 232 P.3d at 271 (same).

Therefore, we conclude there was sufficient evidence from which a reasonable fact finder could have found beyond a reasonable doubt that defendant was the perpetrator.

The judgment is affirmed.

Judge TAUBMAN and Judge RICHMAN concur.

---

3. The prosecution did not ask J.E. to identify defendant in court because defendant's appearance had changed since the time of the assault: he no longer had facial hair and he had gained fifty pounds.