## A11A0506. SCALES v. THE STATE.
### (712 SE2d 555)

ELLINGTON, Chief Judge.

A Fulton County jury found Donald Scales guilty of rape, OCGA § 16-6-1 (a) (1); kidnapping, OCGA § 16-5-40 (a); and false imprisonment, OCGA § 16-5-41 (a). Scales appeals from the denial of his motion for a new trial, contending that his prosecution was barred by the statute of limitation, that his trial counsel was ineffective, and that the trial court committed errors that require a new trial. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that, at around 5:45 a.m. on July 6, 1993, a man abducted the victim from the sidewalk as she was walking to catch a MARTA train to her class at Georgia State University. The man took the victim across a parking lot and onto the premises of a restaurant, forced her up a flight of stairs and onto a secluded deck, threatened to kill her, and raped her. When the victim tried to leave after the rape, the man forced her back down to the floor and told her to stay there until he was gone. Frightened, the victim complied with his demands until she was sure he was gone.

The victim reported the rape to the Atlanta Police Department. The victim told the officers that she did not know her rapist, that she had never seen him before, and that she would not recognize him if she saw him again. All that she recalled was that her rapist was a black male in his early twenties and of average height. A police officer took the victim to the Grady Rape Crisis Center where a doctor examined her for evidence of sexual assault. Because sperm was detected in the vaginal swabs taken from the victim, the sample was tested for DNA, and a DNA profile of the rapist was obtained. In 1998, the rapist's DNA profile was added to the Combined DNA Index System ("CODIS"), a national DNA database funded by the FBI.

---

[1] Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

In January 2007, the CODIS administrator for the State of Georgia Crime Lab received information that the DNA profile from the 1993 rape had matched the DNA profile of Donald Scales.[2] This was the first time that the State had received information concerning the possible identity of the victim's rapist. After the CODIS identification was obtained, the police arrested Scales pursuant to a warrant and obtained a buccal swab from him for additional DNA testing. An additional swab was also taken from the victim. These 2007 swabs were tested and compared to the 1993 samples taken from the victim, and Scale's DNA profile matched the 1993 DNA profile of the victim's rapist, confirming the CODIS match.

On February 16, 2007, a Fulton County grand jury returned an indictment against Scales for rape and kidnapping. On June 8, 2007, the State re-indicted Scales to add a charge of false imprisonment. And on June 22, 2007, the State again re-indicted Scales to add a statement that the applicable statute of limitation had been tolled during the time that Scales' identity had been unknown. The State proceeded to trial on the last indictment.

1. Scales contends that his prosecution was barred because the statute of limitation period had expired as to each of the offenses alleged.[3] It has long been the law that, at trial, "the burden is unquestionably upon the [S]tate to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception." (Citation omitted.) *State v. Tuzman*, 145 Ga. App. 481, 483-484 (3) (243 SE2d 675) (1978). Thus, although the statute of limitation is not an element of the crime, per se, in a prosecution, "where an exception is relied upon to prevent the bar of the statute of limitation, it must be *alleged* and *proved*." (Emphasis supplied.) *McKeehan v. State*, 274 Ga. App. 14, 16 (2) (616 SE2d 489) (2005). In this case, the applicable exception requires proof that the person who committed the crime was "unknown." OCGA § 17-3-2 (2). When such an exception is relied upon, the tolling period ends when the State acquires "actual knowledge" of the defendant's identity. See *Jenkins v. State*, 278 Ga. 598, 602-603 (1) (A) (604 SE2d 789) (2004).

---

[2] Scales' matching sample was obtained by the North Carolina Bureau of Investigation and added to the CODIS database on December 11, 2006, according to an affidavit presented during Scales' motion for new trial.

[3] Scales contends that the applicable period of limitation for rape is seven years; for kidnapping and false imprisonment, four years. He contends that any change in the law increasing or eliminating the limitation period for rape does not apply retroactively or is unconstitutional. Pretermitting whether Scales' argument on these points has any merit, it is immaterial to our analysis given that, pursuant to OCGA § 17-3-2 (2), the limitation periods alleged by Scales would, nevertheless, be tolled.

Scales' identity as the perpetrator was not known either to the victim or to the State until January 2007, when the State received information of the CODIS match. See *Beasley v. State*, 244 Ga. App. 836, 840 (536 SE2d 825) (2000) ("[U]nless and until [a fingerprint found at a crime scene] is matched to an actual person, it cannot be said that the police know who committed the crime."); see also *Jenkins v. State*, 278 Ga. at 603 (1) (A) ("We conclude that the General Assembly intended for the 'person unknown' tolling exception to apply to a situation . . . where there is no identified suspect among the universe of all potential suspects."). Therefore, the limitation period applicable to each offense was tolled from the date the crimes were committed through January 2007. *McKeehan v. State*, 274 Ga. App. at 16 (2). The State indicted Scales within two months of learning of his identity, well within the applicable limitation periods.

Scales also argues that the State's failure to fund DNA testing procedures and a State data base, to test his blood for DNA immediately after the rape, and to add his DNA profile to CODIS immediately thereafter, constituted "wrongful conduct" which should, as a matter of equity, prevent the State from using OCGA § 17-3-2 (2) to toll any statute of limitation in this case. This argument lacks merit. As the Supreme Court of Georgia has explained,

> an inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate due process guarantees under the Fifth and Fourteenth Amendments. To find a due process violation where a delay precedes arrest and indictment, courts must find 1) that the delay caused actual prejudice to the defense, and 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage.

(Citations and emphasis omitted.) *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993). There is no evidence in the record of this case that the State's alleged failure to implement DNA testing and CODIS participation as soon as scientifically or financially feasible was either instigated by the prosecution or deliberately done to gain a tactical advantage over Scales or any other defendant. The record shows that as soon as the GBI was informed of a CODIS match, it conveyed that information to the proper law enforcement agency, and the Fulton County district attorney presented the indictment to the grand jury less than two months later.

As Scales has failed to demonstrate that his prosecution was time-barred, we find no error.

2. Scales contends the trial court erred in (a) denying his motion

in limine to exclude testimony concerning the fact that his DNA profile was in the CODIS database and in (b) allowing allegedly improper testimony in violation of the court's order concerning the DNA profile into evidence over objection.

(a) (i) First, Scales argues that the evidence of the CODIS match was not relevant to any issue at trial. The admission of evidence is within the sound discretion of the trial court, and we will not disturb the trial court's evidentiary decisions on appeal absent an abuse of discretion. *Smith v. State*, 265 Ga. App. 236, 238 (4) (593 SE2d 695) (2004). "Unless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value." (Punctuation and footnote omitted.) *State v. Adams*, 270 Ga. App. 878, 881 (2) (609 SE2d 378) (2004). Evidence is relevant if it tends to prove or to disprove a material fact at issue, and every act or circumstance which serves to explain or throw light upon a material issue is relevant. *Sailor v. State*, 265 Ga. App. 645, 648 (2) (595 SE2d 335) (2004).

In this case, the circumstances under which the State became aware of Scales' identity as a suspect in the victim's rape were offered to prove when the tolling period ended and whether the State carried its burden of showing an exception to the applicable statutes of limitation. Therefore, the testimony concerning the CODIS match was relevant.

(ii) Even if relevant, however, Scales contends that the fact that his DNA profile was in the CODIS database constitutes improper "other crimes" character evidence, the prejudice of which outweighs its probative value. According to Scales, a juror would inevitably draw the conclusion that, because his DNA profile was in the database, he must have committed another crime.

A DNA profile, like a fingerprint card, may contain information linking the defendant to another criminal offense. We have held that the admission of a fingerprint card *that indicates prior criminal activity* impermissibly places a defendant's character into evidence in violation of OCGA §§ 24-2-2 and 24-9-20 (b). See *Keller v. State*, 231 Ga. App. 546, 548 (4) (499 SE2d 713) (1998); *Jinks v. State*, 229 Ga. App. 18, 19 (2) (493 SE2d 214) (1997). However, the admission of evidence indicating that the defendant's fingerprints matched those in a database *alone* "does not introduce character into evidence, particularly where crime-identifying information has been redacted." (Citations omitted.) *Keller v. State*, 231 Ga. App. at 548 (4). Similarly, evidence that a defendant's DNA profile is included in a database compiled by a state or a federal government agency would reflect badly on the defendant's character if the DNA profile or

references to the database linked the defendant to criminal activity.[4] Therefore, we hold that evidence of a matching DNA profile in a government database does not, in and of itself, constitute impermissible character evidence when no reference is made as to why the matching sample was collected or stored and when no reference is made linking the defendant's DNA profile to other criminal activity. Other states have reached similar conclusions.[5]

In ruling on Scales' motion in limine, the Court ordered the State not to make any statement or to elicit any testimony implying that the "CODIS database information is culled from offenders or prisoners," and to redact any document that might contain such information, and the State complied. Further, the court directed the State to "draw parallels between the CODIS database and other databases, such as fingerprint databases, and the fact that these databases collect information from various sources."

Given that the trial court's order was properly and narrowly tailored to exclude any impermissible character evidence, the trial court did not abuse its discretion in admitting information concerning CODIS and Scales' matching DNA profile for the limited, relevant purpose of explaining "why this fourteen year old case is now being prosecuted and how the investigation came to focus on the Defendant."

(b) Scales contends that, despite the trial court's ruling on his motion in limine, inadmissible character evidence in violation of the court's order was nevertheless submitted to the jury over his objection. Scales references testimony from a GBI forensic biologist,

---

[4] See *Missouri v. McMilian*, 295 SW3d 537, 540 (Mo. App. 2009) ("DNA profiles are difficult to distinguish from fingerprint cards in this context. In both cases, the State has compiled databases containing identifying information. In both cases, identifying evidence from an unknown perpetrator can be compared to the database, enabling police to find a lead where none previously existed. In cases where a 'hit' or match is made, the State needs to be able to explain how a particular individual became a suspect, especially where, as here, a considerable period of time has passed since the offense. In both cases, a possibility exists that the public may assume that this identifying information is collected primarily or exclusively from persons arrested for, and/or convicted of, crimes.").

[5] See *People v. Harland*, 2010 Colo. App. LEXIS 977 (trial court did not err in allowing agent to testify briefly that the defendant's DNA profile was in a database where there was no evidence regarding how his profile came to be in the database and there was no mention of any criminal activity); *Missouri v. McMilian*, 295 SW3d at 540 (no impermissible character evidence adduced when, consistent with the trial court's limine ruling, no reference was made to the reason defendant's DNA was in the database, and the witness indicated that the database contained DNA from individuals other than just convicted felons); *People v. Jackson*, 232 Ill. 2d 246 (903 NE2d 388) (Ill. 2009) (the trial court did not abuse its discretion in allowing the limited reference to the DNA database evidence when no evidence adduced linking defendant to other crimes); *People v. Meekins*, 828 NYS2d 83, 86 (34 AD3d 843) (App. Div. 2006) (evidence of the DNA database match was reasonably necessary to explain to the jury the four-year gap between the commission of the rape and the defendant's apprehension, when no evidence adduced linking defendant to other crimes).

who was testifying as to the methods used by the GBI state crime lab to test, peer review, and then submit its backlog of forensic samples from cold cases to CODIS after receiving a grant for that purpose. The scientist, however, was not commenting on or describing CODIS in any way that violated the court's order, but, rather, was explaining that, pursuant to the grant, the GBI was required to follow strict guidelines when uploading the GBI's forensic samples into the database. Because Scales has not shown how any testimony specifically violated the court's order, we find no error.

3. Scales contends the court erred in "granting the State's motion" to exclude "his evidence." Scales fails to cite to such a ruling, and it is not clear from Scales' brief what evidence he was allegedly prohibited from using. It appears, however, that the State moved to exclude "documents from GBI that the defense requested," possibly "DNA documents" which were not provided to the State within ten days of trial. The trial court gave Scales the option of going forward without the documents or having his case continued for a month. Scales chose to go forward with the trial.

Without showing exactly what the documents were, how they would have been used in Scales' defense, and how their absence allegedly prejudiced the defense, Scales failed to demonstrate that he was harmed as a result of that ruling. See *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006) ("In order to have reversible error, there must be harm as well as error.") (citation omitted). Consequently, this claim of error presents no basis for reversal.

4. Scales contends the trial court erred in granting the State's motion to exclude Juror No. 20 for cause based upon his expressed bias against police officers and in favor of Scales. "[W]hether to strike a potential juror for cause is a matter for the trial court's sound discretion. As the trial court's conclusion regarding bias is based in part on demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference." (Citation and punctuation omitted.) *Porter v. State*, 278 Ga. 694, 697 (5) (606 SE2d 240) (2004).

During voir dire, Juror No. 20 said that he had had negative experiences with the police "all the time." Once, an officer "threw [him] on the ground." The juror expressed his belief that he would be able to tell whether police officers were lying by their "little evil eyes." He expressed concerns about the recent police shooting of an elderly woman in his neighborhood. He also said that three of his friends had been wrongly accused of rape, and that Scales looked "too smart to rape somebody[.]" He also had received first offender treatment concerning his arrest for entering an automobile. Although Scales' counsel attempted to rehabilitate the juror, eliciting a statement that the juror would listen to and fairly weigh the

testimony of witnesses, "the trial court is in the best position to evaluate whether such rehabilitation is successful after a juror expresses [his or her] bias." *Porter v. State*, 278 Ga. at 697 (5). Therefore, given the juror's expressions of bias in favor of Scales and against police officers, Scales failed to show that the trial court abused its discretion in striking the juror for cause. Id.

5. Scales contends the trial court interfered with his efforts to prove that the victim had consensual sex with him when it "sua sponte denied trial counsel the opportunity to ask [the victim] if she had helped [the rapist] guide his penis into her." Contrary to Scales' assertion, this question had already been asked and answered at the time of the court's ruling. This particular detail was also in evidence in the form of the victim's statement to the police, which the detective read into evidence. Therefore, we find no error. See *Coleman v. State*, 160 Ga. App. 158, 159 (3) (286 SE2d 494) (1981) ("The trial judge is more than a mere moderator of a debate; he is a minister of justice, whose duty it is to govern the progress of the trial and, where possible, to prevent introduction of redundant or inadmissible matters.") (citation and punctuation omitted).

6. Scales contends the trial court erred in admitting two documents into evidence over his objection: (a) State's Exhibit 7, a copy of an official report generated by a GBI forensic scientist on October 15, 1998, which showed that the victim's 1993 rape kit had been delivered to the GBI on September 21, 1993, that DNA isolation procedures had been performed on semen samples taken from the rape kit, and that the profile obtained therefrom had been added to the DNA profile database in 1998, and (b) State's Exhibit 8, a crime lab bag containing the victim's rape kit, which was labeled with the GBI's 1993 case file number. Scales objected to State's Exhibit 7 on the ground that it was not an original and was not signed by the scientist who performed the DNA test. Scales objected to State's Exhibit 8 on the ground that it was "not identified" and contained "hearsay." The record reveals that these items, among others, were presented by the State to show the chain of custody of the DNA evidence obtained from the victim in 1993, the method by which her rapist's DNA profile was obtained and the fact that it was sent to CODIS in 1998, and the procedures used by crime lab employees to handle and store the DNA.

Specifically, the State presented the following evidence on these issues. Medical professionals testified that they extracted vaginal swabs from the victim for a rape kit (State's Exhibit 6), which was placed into a bag (State's Exhibit 8), and kept in a secure place until it was labeled and signed out by a transporting officer. A police officer testified that, pursuant to standard procedures, he transported the bag containing the rape kit to the GBI, a fact which is also reflected

in the forensic scientist's report (State's Exhibit 7). State's Exhibit 7 indicates that the rape kit was received by the forensic scientist and her supervisor.

The manager of the forensic biology section of the GBI's Division of Forensic Sciences testified that, in preparing to testify as the State's DNA expert, he reviewed the forensic scientist's case file, as she was no longer employed with the GBI, including the evidence that she handled and any official reports that she generated in the case in the regular course of her duties and which were maintained in the custody of the GBI, including State's Exhibits 6, 7 and 8. He reviewed the methods by which the scientist obtained, stored, and analyzed the semen sample, extracted DNA, produced a DNA profile from the sample, and added the profile to the CODIS database — a summary of which, he testified, is reflected in State's Exhibit 7, an "exact copy" of the original document from the scientist's case file. He testified that, in his expert opinion, the scientist used the proper and required procedures recognized in the field to store, extract, and analyze DNA. In addition, a GBI DNA analyst testified that he analyzed the 1993 DNA profile and compared it against Scales' 2007 profile, and that they matched.

As for State's Exhibit 8, it was properly identified by several witnesses. To the extent it contains any hearsay, the bag and identifying labels upon it were admissible as a business record that was used to establish the chain of custody of the evidence contained within it. See *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004) ("Although hearsay evidence is generally inadmissible, OCGA § 24-3-14 provides an exception for the admission of business records that would otherwise be excluded as hearsay.") (citation omitted). State's Exhibit 7 was also generated as a business record, and it was identified by the scientist's supervising manager as an exact copy of an original that he reviewed in developing his expert opinion that the scientist properly stored, handled, and analyzed the samples in her custody during her employment with the GBI, an opinion that he is permitted to give, though it is based, in part, on facts gathered by another. See *Rector v. State*, 285 Ga. 714, 715-716 (4) (681 SE2d 157) (2009). Pretermitting whether the scientist's report was admissible given that she did not testify as to her conclusions and was not available for cross-examination, see id., Scales did not preserve the error by interposing a contemporaneous objection on this basis. *Brinson v. State*, 276 Ga. 671 (581 SE2d 548) (2003). Moreover, even had such an objection been made, any error would have been harmless because there is no reasonable probability that it contributed to the verdict given that it was cumulative of the supervising manager's testimony concerning the document. See *Belmar v. State*, 279 Ga. 795, 797 (2) (621 SE2d 441) (2005) ("The

erroneous admission of hearsay testimony is not reversible error where the hearsay is cumulative of legally admissible evidence of the same fact.") (citations omitted). Consequently, we find no reversible error in the trial court's admission of State's Exhibits 7 and 8.

7. Scales contends that his conviction for kidnapping should be vacated because the State failed to prove the essential element of asportation, as required in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008). In *Garza*, the Supreme Court of Georgia articulated a test which set out four factors to be considered in determining whether the movement at issue constituted the asportation element of kidnapping under OCGA § 16-5-40 as it then existed:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Citation and footnote omitted.) Id. The Court emphasized that

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

(Citation and punctuation omitted.) Id.

The evidence in this case shows that Scales snatched the victim from the sidewalk, forced her across a parking lot and onto the premises of a restaurant, took her up a flight of stairs to a secluded deck where she could not be seen, and then raped her. The evidence showed that Scales' movement of the victim substantially isolated her from protection or rescue. Although the duration of the movement was relatively short, and although the movement facilitated the rape, the movement did not constitute an inherent part of that rape. Scales' removal of the victim from the visibility of the street to the secluded deck area was not essential to the sexual assault itself as an assault can occur in broad daylight in an open area; rather, it was to isolate the victim from protection and rescue, thus increasing the danger she faced. See *Flores v. State*, 298 Ga. App. 574, 575-576 (1) (680 SE2d 609) (2009) (the forced removal of the victim from a visible area to a secluded dark area was not essential to the assault

itself, was an attempt to isolate her from protection and rescue, increased the danger she faced, and was, therefore, sufficient evidence of asportation to support a kidnapping conviction). Thus, the evidence was sufficient to prove the element of asportation and to support Scales' kidnapping conviction. Id.

8. Scales contends that his conviction for false imprisonment[6] merged with the offense of kidnapping[7] as it is a lesser included offense and that, therefore, the trial court erred in imposing separate sentences. In determining whether a merger has occurred, the first question we must resolve is "whether the different offenses are proven with the same facts. If one crime is complete before the other takes place, the two crimes do not merge." (Punctuation and footnotes omitted.) *Chatman v. State*, 283 Ga. App. 673, 675 (3) (642 SE2d 361) (2007). In this case, the kidnapping occurred when Scales forced the victim to move to a secluded location and held her there against her will. After Scales raped the victim, he falsely imprisoned her on the premises by shoving her to the ground and ordering her to remain under threat of violence while he made his escape. These two events are separate in time and supported by separate facts. Consequently, they constitute separate offenses which do not merge. See id.

9. Scales contends his trial counsel was ineffective for failing to file a plea in bar based upon the expiration of the statute of limitation period and the State's delay in bringing the case to trial. As we explained in Division 1, the statute of limitation was tolled because Scales' identity as a suspect in the rape was not known until 2007. The State did nothing to contribute to that delay and, in fact, the State indicted Scales within two months of learning his identity. Thus, there was no merit to the motion, and, had Scales' trial counsel filed such a motion, it would have been futile. "[F]ailure to pursue a futile motion does not constitute ineffective assistance [of counsel]." (Punctuation and footnote omitted.) *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED JUNE 15, 2011.

*Charles H. Frier*, for appellant.

---

[6] OCGA § 16-5-41 (a) (a person commits false imprisonment when, in violation of the personal liberty of another, he or she confines or detains that person without legal authority).

[7] OCGA § 16-5-40 (a) (a person commits kidnapping when he or she abducts any person without lawful authority and holds such person against his or her will).

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.