

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,            )
                               )
           Respondent,      )
                               )

v.                              )        No. SC99625
                               )

CLINTON M. BOYD,         )
                               )
           Appellant.       )

*Opinion issued February 14, 2023*

## APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
### The Honorable David Jones, Judge

Clinton Boyd appeals his judgment of conviction after a jury found him guilty of two counts of first-degree statutory sodomy, three counts of first-degree child molestation, and one count of enticement of a child. In his appeal, Boyd contends the circuit court erred in failing to sever one of the six counts from the trial and challenges the sufficiency of evidence supporting the jury's finding of guilt for enticement of a child. This Court finds the circuit court did not abuse its discretion in refusing to sever the count and sufficient evidence supported a reasonable jury finding Boyd committed enticement. Boyd further argues the circuit court plainly erred in failing to *sua sponte* declare a mistrial based on

statements the State made during closing arguments and testimony elicited during Boyd's cross-examination. This Court finds the circuit court committed no error affecting Boyd's substantial rights in failing to declare a mistrial based on the State's closing argument or testimony elicited during Boyd's cross-examination. This Court affirms.

**Factual Background and Procedural History**

Boyd has a criminal history relevant to the issues raised in this appeal. In 2002, he committed statutory rape against two sisters who were 14 and 15 at the time. Boyd was friends with the sisters' family and occasionally drove the sisters places. He took each girl to buy a dress and then had sexual intercourse with each of them. These assaults were reported after the younger sister became pregnant with Boyd's child. In July 2004, Boyd pleaded guilty to two charges of statutory rape and was placed on probation. Then, in December 2004, Boyd pleaded guilty to third-degree domestic assault. His probation was subsequently revoked, and he served two and a half years in prison.

The criminal convictions in the underlying appeal arise out of Boyd's conduct with three female children, D.D., Q.M., and H.M, ranging from ages 5 to13.

D.D. was born in late 2003 and is Boyd's biological daughter. Boyd occasionally took care of D.D. after he was released from prison in 2007. In 2010, when she was 7 years old, D.D. disclosed that Boyd had "touched her spot with his hand" and indicated on a diagram that Boyd had touched her vagina. When interviewed by police, Boyd denied touching D.D. inappropriately and explained he was attracted to girls who had been through puberty.

2

Q.M. and H.M. are sisters. The girls' mother, L.M., was friends with Boyd and moved her family to Springfield, Missouri, where Boyd resided in 2018 at Boyd's suggestion. At the time, Q.M. and H.M. were 12 and 10 years old, respectively. Boyd began spending time at L.M.'s home daily after L.M.'s ex-boyfriend moved out. L.M. worked nights, and Boyd sometimes watched Q.M. and H.M. while L.M. worked.

On one occasion, Boyd entered Q.M.'s bedroom while she was napping and began rubbing her thigh. Q.M. woke up while Boyd was touching her but pretended she was still asleep. After Q.M. woke up, Boyd put his hand in her pants and touched her vagina. On another occasion when Q.M. and Boyd were home alone, he came into the bathroom while Q.M. was in the shower, reached through the shower curtain, and squeezed Q.M.'s breasts and her vagina. Boyd told Q.M. not to tell her mother or he would hurt her.

Despite Boyd's warning, Q.M. disclosed these offenses to L.M. and was later interviewed at the Children's Advocacy Center (CAC). Q.M. said she had known Boyd since she was a baby and he had been doing things to her as long as she could remember. Q.M. said she was 13 years old when she last saw him. Q.M. was very reluctant to talk about Boyd touching her, but she eventually said he touched her when she was sleeping and while she was in the shower. Q.M. identified on a diagram that Boyd had "grop[ed]" her chest, vagina, and thigh, with his hands both on top of and under her clothes. Q.M. expressed concern about Boyd's daughter, stating that Boyd's daughter was like a little sister to her and she was worried Boyd was doing the same thing to her.[1]

---

[1] Q.M.'s concern did not involve D.D. but a separate daughter of Boyd.

3

Q.M.'s younger sister, H.M., also endured abuse from Boyd. One day, Boyd told L.M. and H.M. that he was taking H.M. to see one of his daughters so they could play together. Instead, Boyd took H.M. to a house and made her wear a dress that L.M. had thrown away because it was "inappropriate" for someone H.M.'s age.[2] Boyd wanted to take "sexy pictures" of H.M. in the dress on his phone, but she was scared and uncomfortable, so Boyd showed her similar pictures he had taken of one of his daughters to make H.M. more comfortable with taking the photographs. Boyd asked H.M. to pose in the dress and took photographs of her with his phone. He then pulled her legs across him, touched her inner thigh, and kissed her neck and lips. Boyd told H.M. that, if she was older, she would be his girlfriend.

H.M. disclosed this event to L.M. and was also interviewed at the CAC. During the interview, H.M. stated she was 11 years old. She explained she was afraid Boyd was going to get mad and come back to "get her" because he told her not to tell anyone. H.M. also disclosed that Boyd rubbed her breasts above and below her clothing on multiple occasions. H.M. drew on two diagrams showing where he had touched her.

Following D.D.'s, Q.M.'s, and H.M.'s disclosures, the State of Missouri charged Boyd with the following six counts of sexual offenses: Count I, first-degree statutory sodomy for abuse involving Q.M.; Count II, first-degree child molestation for abuse involving Q.M.; Counts III and IV, first-degree child molestation for abuse involving H.M.;

---

[2] L.M. threw away a bag of dresses given to her by a neighbor. L.M. did not think the dresses were appropriate for her daughters to wear because they were "short, revealing, not-age appropriate, tight, [and] clingy."

Count V, felony enticement of a child for conduct involving H.M.; and Count VI, first-degree statutory sodomy for abuse involving D.D.[3]  Counts I through V alleged sexual offenses committed against Q.M. and H.M. between 2017 and 2019, and Count VI alleged sexual offenses committed against D.D. between 2008 and 2011.

Prior to trial, Boyd filed a motion to sever Counts I through V from Count VI.  He argued severance was appropriate because there was a 10-year difference between the charged offenses and the jury likely would consider evidence of guilt of one charge as evidence of guilt of another charge.  The State subsequently filed a notice of intent pursuant to article I, section 18(c) of the Missouri Constitution, to admit evidence of the abuse alleged to have been suffered by D.D., Q.M., H.M. and Boyd's 2004 statutory rape convictions to demonstrate Boyd's propensity to commit the offenses with which he was charged.

After hearing argument on these motions, the circuit court found the propensity evidence the State sought to introduce was reliable and the probative value of the propensity evidence "greatly exceeded the prejudicial effect of said evidence."  The court overruled Boyd's motion to sever.  Because the court found the evidence supporting the charges Boyd sought to sever from the trial admissible to demonstrate Boyd's propensity to commit such offenses under article I, section 18(c) of the Missouri Constitution, the court found Boyd would suffer no additional prejudice by denying severance.  The court

---

[3] The State originally charged Boyd with nine counts, three of which related to allegations made by a fourth female child.  These counts were dismissed.  Therefore, this Court's recitation of facts will not include facts related to the dismissed counts.

5

also explained it was confident that, with proper instructions, the jury would be able to compartmentalize the evidence and consider each count on its own merits. Finally, the court found joinder was in the best interest of judicial economy because the same evidence would be introduced at both trials if severance were granted pursuant to its propensity evidence ruling.

The day before trial, Boyd renewed his motion to sever. Boyd again argued the charges should be severed because of the 10-year time difference. He further contended severance was appropriate because D.D. was much younger than Q.M. and H.M. at the time of the alleged offenses. The circuit court overruled Boyd's renewed motion.

The case was tried to a jury over four days. At trial, the State introduced testimony from D.D., Q.M., H.M., L.M., the CAC interviewers, and two investigators from the Springfield Police Department; played the video of all three children's CAC interviews; and submitted the children's body diagrams and anatomical drawings indicating where Boyd touched them. Before resting, the State introduced Boyd's 2004 prior convictions for statutory rape of the 14 and 15-year-old sisters pursuant to article I, section 18(c) of the Missouri Constitution. Boyd testified in his own defense. During cross-examination, Boyd responded to questions regarding his prior convictions and his relationships with his children. The trial concluded with closing arguments. The State ended its rebuttal argument by stating "no other child should have to promise not to tell what [Boyd] did to

them[.]"[4]  The jury found Boyd guilty of all counts.  Boyd appeals his convictions.[5]

**Analysis**

Boyd raises several arguments on appeal.  First, he contends the circuit court abused its discretion in failing to sever the charges related to Q.M. and H.M. from the charge related to D.D.  Second, he contends there was insufficient evidence to support his conviction for enticement of H.M.  In his third, fourth, and fifth points, Boyd argues the circuit court plainly erred in failing to *sua sponte* declare a mistrial when the State elicited testimony during cross-examination regarding Boyd's prior domestic assault conviction, his initial grant of probation for his prior statutory rape conviction, and his relationships with his children.  In his sixth point, Boyd argues the circuit court plainly erred in failing to *sua sponte* declare a mistrial based on the statement made by the State in its closing argument.[6]

---

[4] A more detailed recitation of the evidence adduced at trial and the State's closing argument can be found in the analysis below.

[5] This Court has jurisdiction over Boyd's appeal pursuant to article V, section 10 of the Missouri Constitution.

[6] Boyd also raises a seventh point in his appeal.  In this last point, he asserts the circuit court erred in executing its written judgment and asks it be corrected under Rule 29.12(c). All the parties agree the circuit court's written judgment contained an error by stating that Count VI was for child molestation in the first degree.  While this case was pending on appeal, the circuit court entered an amended sentence and judgment correctly stating that Count VI was for statutory sodomy in the first degree.  The State concedes the correction entered by the circuit court in a *nunc pro tunc* order was proper.  Because this clerical error was evident from the record, the *nunc pro tunc* order was proper and resolves this point on appeal.  *See In re: D.E.W.*, 617 S.W.3d 514, 522 (Mo. App. 2021) ("Nunc pro tunc . . . allows a court that no longer has jurisdiction over a case to maintain jurisdiction over its records so the court may correct clerical mistakes in the judgment" as long as "the clerical error [is] discernible from the record.").  This point therefore, is denied as moot.

7

## I. Severance

Boyd argues the circuit court abused its discretion in overruling his motion to sever Count VI, alleging abuse to D.D., from Counts I through V, which alleged abusive conduct toward Q.M. and H.M. The abuse committed against D.D. took place nearly 10 years before the abuse committed against Q.M. and H.M. Boyd contends this gap in time likely confused the jury and effectively turned the proceedings into two trials. He further contends this was exacerbated by the fact that D.D. was younger than Q.M. and H.M. at the time of the abuse. Boyd also alleged in his motion to sever that severance was necessary because the jury was likely to use the evidence introduced to support the offense related to D.D. to find Boyd guilty of the charges involving Q.M. and H.M.

As a preliminary matter, Boyd does not contend the offenses were improperly joined. Determining whether separate offenses can be joined together in the same charging document is governed by Rule 23.05.[7] Whether offenses joined pursuant to Rule 23.05 should be severed for trial is governed by a related, but separate, authority as set forth in Rule 24.07. "Joinder and severance are separate and distinct issues for appellate review." *State v. Warren*, 141 S.W.3d 478, 486 (Mo. App. 2004). Because Boyd does not contend joinder of the counts was improper, the only issue before this Court is whether the circuit

---

[7] Rule 23.05 provides,

> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

court abused its discretion in failing to sever Count VI from the first five counts pursuant to Rule 24.07.

When applying Rule 24.07, "[t]he decision regarding severance is left to the sound discretion of the trial court." *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998). "A trial court abuses its discretion if its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. McKinney*, 314 S.W.3d 339, 342 (Mo. banc 2010).

Severance is proper only when "a party makes a particularized showing of substantial prejudice if the offense is not tried separately" and "the court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense." Rule 24.07; *McKinney*, 314 S.W.3d at 342. "In considering whether severance is required, the court considers the number of offenses joined, the complexity of the evidence, and the likelihood that the jury can distinguish the evidence and apply it, without confusion, to each offense." *McKinney*, 314 S.W.3d at 342 (internal quotation omitted). Missouri courts have repeatedly held that, "when the evidence relating to each offense is uncomplicated and distinct, and the jury is properly instructed to return separate verdicts for each offense charged, there is no abuse of discretion in refusing to sever the counts." *State v. Chambers*, 234 S.W.3d 501, 509 (Mo. App. 2007); *see McKinney*, 314 S.W.3d at 342; *see also Morrow*, 968 S.W.2d at 109.

In his motion to sever, Boyd failed to make a particularized showing that he would be substantially prejudiced if all the charges were tried together. Boyd generally alleged

9

severance was necessary because the jury was likely to use the evidence introduced to support Count VI involving D.D. to find Boyd guilty of Counts I through V involving Q.M. and H.M. This argument is conclusory and fails to persuasively support severance. S*ee State v. Hallmark*, 635 S.W.3d 163, 169 (Mo. App. 2021) (Allegations that a jury will likely consider evidence of guilt of one charge as evidence of guilt of the others "are insufficient to show prejudice as they are entirely conclusory and devoid of any specific factual support."); *see also State v. Love*, 293 S.W.3d 471, 477 (Mo. App. 2009) ("The mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one does not call for severance." (internal quotation omitted)). Moreover, any prejudice from trying the offense related to D.D. with the offenses related to Q.M. and H.M. is mitigated by the admission of Boyd's 2004 convictions. Regardless of whether the circuit court severed the offense related to D.D., the jury heard evidence that Boyd committed statutory rape in 2002 against 14 and 15-year-old sisters.[8] The prejudice of jointly trying offenses related to separate victims is reduced when the jury has heard evidence that the defendant has abused victims other than the victims in the joined offenses.[9] This propensity evidence demonstrated Boyd had a

---

[8] Boyd's conduct resulting in his 2004 convictions is strikingly similar to the offenses involving Q.M. and H.M. Boyd was close to a family with two young female children, obtained a position of trust with the family where he was with the girls unsupervised, took each girl separately to a place where he was alone with her, and had sex with them after purchasing or having them wear dresses.

[9] Boyd does not contend this propensity evidence was admitted improperly under article I, section 18(c) of the Missouri Constitution.

10

pattern of abusing minor girls and diminished the risk of substantial prejudice from jointly trying the offense related to D.D. with the offenses related to Q.M. and H.M.

Boyd's remaining allegations of substantial prejudice note the 10-year time difference between the alleged offenses and D.D. was a pre-pubescent girl, much younger than Q.M. and H.M. when the abuse occurred. He argues the age difference and time gap likely confused the jurors and turned the proceedings into essentially two different trials. Boyd, however, fails to explain how the age and time differences substantially prejudiced him by confusing the jury or resulting in two separate trials. In fact, the record reveals the opposite, as the charges and evidence presented at trial were straightforward and the jury was instructed to consider each count separately.[10] The jury heard testimony from all three children and the witnesses involved in the investigation of each child. D.D.'s testimony, specifically, was brief, with her entire testimony taking up fewer than four pages in the trial transcript. The children's testimonies were clear and "not beyond the sophistication of the average juror." *Hallmark*, 635 S.W.3d at 169. Boyd fails to point to anything in the record to demonstrate that "a properly instructed jury would be unable to distinguish what was relevant to each [child] and to each charge." *Id.*

Because Boyd failed to make a particularized showing of substantial prejudice, the circuit court did not abuse its discretion in overruling Boyd's motion to sever. In fact, the record reveals the circuit court carefully weighed Boyd's concerns of prejudice when making its severance determination. After a hearing, the circuit court concluded the counts

---

[10] The jury is presumed to have followed these instructions. *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022).

11

did not need to be severed because it was confident a properly instructed jury would be able to compartmentalize the evidence and consider each count on its own merits. *See id.* (finding the circuit court did not abuse its discretion when denying severance because it found the evidence was not overly complex and the jury was capable of distinguishing the evidence for each offense). The circuit court also utilized its discretion in finding judicial economy favored trying all the charged offenses together. It also found Boyd would suffer no additional prejudice by denying severance because the court had admitted all the evidence supporting the charged offenses to demonstrate Boyd's propensity to commit such offenses under article I, section 18(c) of the Missouri Constitution. *See Morrow*, 968 S.W.2d at 109. In other words, the circuit court thoughtfully weighed and considered the fact that severing Counts I through V from Count VI would not diminish the prejudice alleged by Boyd because the same evidence would have been introduced at the separate trials pursuant to its propensity evidence ruling.[11]

---

[11] The fact that, pursuant to the circuit court's propensity evidence ruling, the same evidence would have been introduced at trial had the counts been severed is certainly relevant and appropriate to consider when the circuit court conducted its severance analysis. This Court, however, cautions against relying too heavily on this factor. This Court has stated, "[w]hen prosecuting a sexual offense against a minor child, article I, section 18(c) allows the admission of prior criminal acts to demonstrate a defendant's propensity to commit the crime for which he or she currently is charged." *Minor*, 648 S.W.3d at 732. The admissibility of such evidence, however, is not without limitation. Article I, section 18(c) does not guarantee propensity evidence will be admissible as such evidence must be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Williams*, 548 S.W.3d 275, 285 n.11 (Mo. banc 2018). Moreover, in an effort to reduce the danger of unfair prejudice and properly admit propensity evidence introduced under article I, section 18(c), such evidence may be presented as a "short, dispassionate stipulation," rather than through potentially emotional live testimony at trial. *Id.* at 290. For this reason, introducing propensity evidence under

12

For all these reasons, Boyd fails to demonstrate both that the circuit court abused its discretion and that he was substantially prejudiced when the circuit court overruled his motion to sever Count VI from Counts I through V. *See McKinney*, 314 S.W.3d at 342 (finding overruling a motion to sever will be reversed only upon a showing of both an abuse of discretion and a clear showing of prejudice).

## II. Sufficiency

Boyd next challenges the sufficiency of the evidence for his conviction for enticement of a child. He argues the State failed to prove he had H.M. wear a dress and pose for pictures for the purpose of engaging in sexual conduct.

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). "In making that determination, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." *State v. Alexander*, 505 S.W.3d 384, 393 (Mo. App. 2016) (citing *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Belton*, 153 S.W.3d at 309.

---

article I, section 18(c), as opposed to trying the allegations involving separate victims in the same trial, might minimize the prejudice of such evidence. Hence, prudence discourages wholesale reliance on the admission of propensity evidence under article I, section 18(c) to justify overruling a motion to sever.

13

Section 566.151.1 provides, "[a] person twenty-one years of age or older commits the offense of enticement of a child if he or she persuades, solicits, coaxes, entices, or lures whether by words [or] actions … any person who is less than fifteen years of age for the purpose of engaging in sexual conduct."[12] Section 566.151.1 does not require the sexual conduct to actually occur. *See State v. Doubenmier*, 444 S.W.3d 921, 928 (Mo. App. 2014).

Viewing the evidence in the light most favorable to the verdict, it was reasonable for the jury to infer Boyd took the pictures of H.M. in the dress to persuade, coax, entice, or lure her to engage in sexual conduct with him. Evidence adduced at trial and the reasonable inferences therefrom reveal Boyd was alone with H.M. and persuaded her to wear a tight, clingy dress that her mother had thrown out because it was inappropriate for a girl her age. He then persuaded her to pose for sexy pictures by showing her similar pictures of his daughter. After taking the pictures, Boyd put H.M.'s legs across him, touched her inner thigh, and kissed her on the neck and lips. Boyd then told H.M. she would be his girlfriend if she were older. Considering this conduct in its entirety, sufficient evidence supported a reasonable jury finding Boyd had H.M. wear the inappropriate dress and pose for sexy pictures to persuade, coax, entice or lure H.M. for the purpose of engaging in sexual conduct with her. *See State v. Perkins*, 640 S.W.3d 498, 502 (Mo. App.

---

[12] "Sexual conduct" is defined as "sexual intercourse, deviate sexual intercourse, or sexual contact." Section 566.010(5). Section 566.010(6) defines "sexual contact" as
> [A]ny touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]

All statutory references are to RSMo Supp. 2018, unless otherwise specified.

2022) ("The necessary intent may be based upon circumstantial evidence or inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct.") (internal quotation omitted)).

**III. Boyd's Cross-Examination**

Boyd's third, fourth, and fifth points on appeal arise out of testimony the State elicited during Boyd's cross-examination. Boyd concedes he did not preserve these points on appeal, as he never objected to this evidence. He argues the circuit court plainly erred in failing to *sua sponte* declare a mistrial when the State elicited testimony during cross-examination regarding Boyd's prior domestic assault conviction, his initial grant of probation in his 2004 statutory rape conviction, and his relationships with his children.

Issues not preserved for appeal may be reviewed only for plain error. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Id.* at 607-08 (internal alterations, citations, and quotations omitted). Because Boyd did not object to the evidence elicited during his cross-examination, this Court reviews Boyd's third, fourth, and fifth points on appeal for plain error.

"Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. McFadden*, 369 S.W.3d 727, 740 (Mo. banc 2012) (internal quotation omitted). Whether to grant a mistrial "is left to the discretion of the trial court

15

because the trial court is in the best position to observe the impact of the problematic incident." *State v. Roberts*, 948 S.W.2d 577, 605 (Mo. banc 1997). Moreover, a court should declare a mistrial *sua sponte* "only in exceptional circumstances." *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998).

*A. Domestic Assault*

The following exchange occurred during the State's cross-examination of Boyd:

> Q. Okay. And what are the other [prior convictions] besides the statutory rape in the second degree?
> A. Domestics, I believe.
> Q. Okay. You have multiple domestics?
> A. Yes.
> Q. Okay. Do you remember what they are?
> A. Not right offhand, no.
> Q. Okay. If I said one was a domestic assault in the third degree, would that be accurate?
> A. Yes.
> Q. Okay. And that was for, on December 5th, 2004, you recklessly caused physical injury to B.E. by striking B.E. in the head?
> A. B.E.?
> Q. Correct.
> A. Correct.

Boyd contends the circuit court plainly erred in failing to *sua sponte* declare a mistrial when the State elicited testimony that Boyd recklessly caused physical injury to B.E. by striking B.E. in the head.[13]

When a defendant chooses to testify, the State has an absolute right to question the defendant's credibility through proof of prior convictions. *State v. Giffin*, 640 S.W.2d 128,

---

[13] B.E. is not a party to this case.

132 (Mo. 1982); section 491.050, RSMo 2016.[14]

> However, the cross examiner cannot inquire of the specific details of the crimes leading to the prior convictions. It is permissible to elicit the nature, dates, places of the occurrences and sentences. In literary terms the who, what, when and where are in order but why and how are not.

*State v. Holden*, 278 S.W.3d 674, 681 (Mo. banc 2009) (internal citations and quotations omitted). The nature of a prior conviction includes the elements of the crime, as articulated in the statute defining the offense. *See id.* This limitation is placed on the cross-examiner to avoid the aggravating effect of the prior conviction by "unduly emphasiz[ing] a conviction" or "delv[ing] into the details of the crimes leading to the prior convictions." *State v. Jones*, 809 S.W.2d 45, 46 (Mo. App. 1991).

The circuit court did not plainly err in failing to *sua sponte* declare a mistrial after the line of questioning about the domestic assault conviction. The State's reference to B.E. by name was not an evident, obvious, and clear error because referring to the name of the victim was necessary to impeach Boyd on the prior conviction. Boyd had multiple prior convictions for domestic violence and had no independent memory of the individual convictions. To impeach Boyd on this prior conviction, the State had to identify the prior

---

[14] The statute provides:

> Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Section 491.050, RSMo 2016.

conviction adequately so Boyd could testify to its occurrence. It was not until the State clarified B.E.'s name that Boyd agreed the information was correct. Eliciting that Boyd "recklessly caused physical injury" was also not an evident, obvious, and clear error. That Boyd recklessly caused physical injury was an element of the crime of third-degree domestic assault and pertains to the nature of his prior conviction. Section 565.070.1(1), RSMo 2000; *see Holden*, 278 S.W.3d at 681.

The detail of the State's question that arguably falls outside of "who, what, when and where" was whether Boyd's prior domestic assault conviction was for striking the victim in the head. This portion of the State's question regarding the prior conviction may have improperly slipped into a detail of the crime relating to "how" the domestic assault occurred, but any potential error was not so evident, obvious, or clear as to constitute plain error. *Baumruk*, 280 S.W.3d at 607. This one, limited detail of how the domestic assault occurred was not unnecessarily graphic or extensive to justify, require, and alert the circuit court of the necessity to *sua sponte* declare the drastic and extraordinary remedy of a mistrial. *See Holden*, 278 S.W.3d at 681 (finding the age of a victim went to the general nature of the conviction); *c.f. State v. Phelps*, 677 S.W.2d 418, 420-21 (Mo. App. 1984) (finding extensive questions about the defendant's level of intoxication and the gun he used during the commission of his previous crime improperly went into details of the prior conviction); *State v. Sanders*, 634 S.W.2d 525, 527-28 (Mo. App. 1982) (finding extensive questions about the details of the crime underlying a prior rape conviction were improper). For all these reasons, Boyd fails to demonstrate the circuit court plainly erred in failing to *sua sponte* declare a mistrial based on the State's question about the domestic assault.

18

*B. Probation*

After the State questioned Boyd about his prior domestic assault conviction, it asked Boyd about the sentence he received for his prior 2004 statutory rape convictions in the following exchange:

> Q: And then we already talked about your two counts of statutory rape in the second degree. You said you got a two-year sentence?
> A. It was two and a half years that I served in prison.
> Q. And you were actually originally granted probation; correct?
> A. Correct.

Boyd contends the circuit court plainly erred in failing to *sua sponte* declare a mistrial following this exchange because the purpose in eliciting this information on cross-examination was to imply to the jury that Boyd committed further bad acts warranting the revocation of his probation. This Court disagrees.

To suggest the State's question regarding Boyd's probation would lead the jury to determine that Boyd committed other bad acts would require speculation. It is more likely the jury inferred that Boyd's probation was terminated due to the 2004 domestic assault as this line of questioning occurred immediately after the State's questions about the domestic assault conviction. Therefore, it is highly speculative to suggest the State's question led the jury to believe Boyd committed some undisclosed additional bad act that caused the termination of his probation. *State v. Lutz*, 334 S.W.3d 157, 162 (Mo. App. 2011) ("[V]ague or speculative references to [a defendant's] involvement in other crimes do not violate [the right to only be tried for the charged offense]."). Boyd, therefore, fails to demonstrate the circuit court plainly erred in failing to *sua sponte* declare a mistrial based

19

on the State's question about Boyd's initial grant of probation for his statutory rape convictions.

*C. Boyd's Relationships with His Children*

The following exchange occurred during the State's cross-examination of Boyd:

Q. How many children do you have?
A. I have a total of eight.
Q. Do you have custody of any of your children?
A. No, I do not.
Q. Can you tell me their names and ages?
A. Wow. Starting with my youngest, [G.] –

BOYD'S COUNSEL: Objection. Relevance, Your Honor.
THE COURT: Sustained.
THE WITNESS: Go ahead and tell her?
THE STATE: And, Judge, if I may, it goes -- the girls talked about playing with some of his children. He elicited testimony as to just one and her address, and I think there are multiple ones that live in the area. So I think it is relevant.
BOYD'S COUNSEL: I wouldn't object if it just has to do with kids their age who live in the area.
THE COURT: All right.

Q. …And tell me about kids who lived in this area back in 2019.
A. As far as my children here in Springfield?
Q. Yes.
A. Okay. [G.]. And she just turned eight. That's my youngest daughter.
Q. What's her name?
A. [G.].
Q. Oh. That's the only one? You just have one here in Springfield?
A. No. I also have another daughter that lives with her grandmother. Her name is [G.L.].
Q. Here in Springfield?
A. Correct.
Q. Any others here in Springfield?
A. I have a son here – [C.].
Q. Okay. Anyone else here in Springfield?
A. Not that I can think of.
Q. Do you know where all your kids live now?
A. No.

Boyd claims the circuit court plainly erred in failing to *sua sponte* declare a mistrial after the State elicited information he fathered eight children, did not have custody of his children, and did not know where all his children lived because this information only served to portray him as a bad person and parent.[15]

Boyd fails to support his claim of error on appeal with relevant argument. The argument section of his brief relating to this point does not attempt to show how the State's questions constitute plain error, i.e., "evident, obvious, and clear" error that "resulted in manifest injustice or a miscarriage of justice." *Baumruk*, 280 S.W.3d at 607-08. He also fails to provide a single citation to authority. "Where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned." *Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 498-99 (Mo. banc 1995); *see State v. Polson*, 145 S.W.3d 881, 897 (Mo. App. 2004) (applying the rule on direct appeal of a judgment of conviction). As a result, Boyd has abandoned this point on appeal.

## IV. Closing Argument – Future Dangerousness

Boyd claims the circuit court plainly erred in failing to *sua sponte* declare a mistrial because the State, in its rebuttal closing argument, made an impermissible reference to Boyd's future dangerousness. Because Boyd did not object to the State's closing argument, this Court reviews for plain error and first must determine whether there was an evident,

---

[15] Boyd cursorily argues, because he is African-American, the State's purpose in introducing this evidence was to implicate racial stereotypes that would bias the jury against him. The record, however, does not demonstrate this was the State's purpose in eliciting this testimony. Rather, the record demonstrates the State's purpose was to corroborate Q.M.'s and H.M.'s credibility, as the State explained when Boyd's attorney objected to this line of questioning.

obvious, and clear error. *Baumruk*, 280 S.W.3d at 607-08. "During closing argument, the State is permitted considerable latitude in arguing the necessity of law enforcement, the duty of the jury to convict the defendant and prevent crime, and the results to society of a failure to uphold the law." *State v. Tramble*, 383 S.W.3d 34, 38 (Mo. App. 2012). While the State "may not speculate as to the future possible acts or conduct of a defendant," *id.*, it may "argue the evidence and all reasonable inferences from the evidence during closing arguments," *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). Therefore, the Court must examine closing arguments in the context of the entire record. *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010).

Evidence adduced at trial revealed Boyd threatened both Q.M. and H.M. if they ever told anyone about the abuse they suffered at his hands. The State drew on this fact by initiating its closing argument with the quote: "Promise you won't tell anyone." The State then ended in rebuttal stating, "[D.D., Q.M., and H.M.] deserve justice for what happened to them, and no other child should have to promise not to tell what [Boyd] did to them[.]" While it could be inferred the reference to "no other child" is a reference to Boyd's future dangerousness, the "brevity of the remark, especially in the context of the whole argument[,]" *State v. Kalter*, 828 S.W.2d 690, 692 (Mo. App. 1992), fails to demonstrate an evident, obvious, and clear error justifying the circuit court *sua sponte* declaring the drastic and extraordinary remedy of a mistrial, *Baumruk*, 280 S.W.3d at 607, 618. The

circuit court, therefore, did not plainly err in failing to *sua sponte* declare a mistrial based on the State's comment in closing argument.[16]

## Conclusion

For the foregoing reasons, this Court affirms Boyd's judgment of conviction.

 

_____
W. Brent Powell, Judge

All concur.

---

[16] Boyd asks this Court to consider the combined effect of all the challenged evidence elicited during cross-examination and the State's closing argument in determining whether manifest injustice occurred to satisfy the plain error review standard. Because this Court does not find the circuit court committed evident, obvious, and clear error for failing to *sua sponte* declare a mistrial based on any of the alleged improper cross-examination and closing arguments, it need not determine whether the combined effect of these claimed errors resulted in manifest injustice. *State v. Skinner*, 494 S.W.3d 591, 594 (Mo. App. 2016).